## In re EGGERT.

### (Circuit Court of Appeals, Seventh Circuit. June 15, 1900.)

#### No. 656.

1. BANKRUPTCY—PREFERENCES—CREDITOR'S KNOWLEDGE OF DEBTOR'S INSOLVENCY.

In determining whether the taking of security by a creditor constitutes an illegal preference, under Bankr. Act 1898, § 60b, the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency. On the other hand, it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but it is sufficient if he has reasonable cause to believe him insolvent. If facts and circumstances with respect to the debtor's financial condition are brought home to him such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose.

2. SAME—REVIEW ON PETITION FOR REVISION—FINDINGS.

A finding that a creditor of a bankrupt did not have reasonable ground to believe his debtor to be insolvent at the time he obtained security for his debt is one of fact, rather than law, and cannot, therefore, be reviewed by the circuit court of appeals on a petition for revision filed under Bankr. Act 1898, § 24b.

**3. SAME—JURISDICTION TO REVIEW ON PETITION.**

> Query: Can the action of the court of bankruptcy be reviewed on original petition in cases where an appeal lies?

On Review of an Order of the District Court of the United States for the Eastern District of Wisconsin.

On the 18th day of January, 1900, William T. Doyle, the trustee in bankruptcy of Louis A. Eggert, filed his petition in this court seeking a review and reversal of an order of the court below. The petition in substance alleges the adjudication in bankruptcy, the appointment of the trustee, and asserts that the Rundle-Spence Manufacturing Company on the 1st day of July, 1899, being a creditor of the bankrupt to the amount of $1,373.04, and within four months prior to the bankruptcy, received from the bankrupt a partial assignment of a claim against the city of Milwaukee as security for its debt. On the 30th day of August, 1899, by stipulation between the Rundle-Spence Manufacturing Company and the trustee, the latter was allowed to receive from the city of Milwaukee the amount of Eggert's claim, without prejudice to the rights of the Rundle-Spence Manufacturing Company to assert in the bankruptcy court its claim thereto to the extent of the amount assigned. Upon receipt by the trustee of the amount of the claim against the city, the Rundle-Spence Manufacturing Company filed its claim in the court of bankruptcy, asserting its right to be paid out of the fund received the sum of $1,241.10, being the amount assigned to it by the bankrupt. The petition further states that upon the hearing of this claim the referee found the following facts and conclusion of law.

### Findings of Fact.

(1) I find that on the 1st day of July, 1899, Louis A. Eggert, the bankrupt herein, was indebted to the Rundle-Spence Manufacturing Company in the sum of thirteen hundred seventy-three dollars and four cents ($1,373.04) for merchandise delivered between the 28th day of April, 1899, and the 5th day of June, 1899, on credit. That on the 1st day of July, 1899, Rundle-Spence Manufacturing Company adjusted its account with the said Louis A. Eggert by giving him a discount of ten per cent., which is the usual discount for cash in that line of business, and was done pursuant to the contract under which the goods were purchased. and agreeing to accept twelve hundred forty-one dollars and ten cents ($1,241.10) in payment, and that on said 1st day of July said Louis A. Eggert gave an order for the sum of twelve hundred forty-one dollars and ten cents ($1,241.10) on the city of Milwaukee, directing it to pay that amount to the Rundle-Spence Manufacturing Company from any moneys due or to become due the said Eggert; that said order was informal and subsequently on the 5th day of July, 1899, the said Louis A. Eggert made an assignment to the Rundle-Spence Manufacturing Company of the amounts due or to become due him from the city of Milwaukee by reason of a certain contract for plumbing on the Fifth Ward School, to the amount of twelve hundred forty-one dollars and ten cents ($1,241.10); and that the said assignment was on the 5th day of July, 1899, filed with the city treasurer and the city clerk of the city of Milwaukee by the Rundle-Spence Manufacturing Company.

(2) That the bankrupt, Louis A. Eggert, for a number of years previous to the 17th of August, 1899, the date of the filing of the petition in bankruptcy, was engaged in the plumbing business in the city of Milwaukee. That the Rundle-Spence Manufacturing Company is a corporation engaged in the manufacture and sale of plumbing supplies at Milwaukee, Wisconsin. That the said Rundle-Spence Manufacturing Company and other corporations and firms engaged in a similar business are members of an association which meets a number of times each month, the purposes of said association being for the mutual protection of the members, and the exchange of information as to trade matters and the standing of parties to whom the members are selling goods on credit. That, under the rules of the association if any debtor of any member of the association fails to meet his obligations promptly and allows accounts against him to remain unpaid, he is placed upon the cash list and no member of the association can give him credit or furnish him any goods except for cash. That at a meeting of the association held on the 18th of May, 1899, at which a representative of Rundle-Spence Manufacturing Company was

present, Louis A. Eggert. the bankrupt, was reported as being behind in his payments, and entitled to no further credit from the members of the association. That on the 15th day of June, 1899, at another meeting of the association, at which a representative of Rundle-Spence Manufacturing Company was present, the report showing that Louis A. Eggert was behind in his payments was renewed, and the Rundle-Spence Manufacturing Company also reported that its account against Eggert, amounting to thirteen hundred seventy-three dollars and four cents ($1,373.04), was past due. That the bankrupt at the said meeting was placed upon the cash list, and could no longer obtain credit from the said Rundle-Spence Manufacturing Company or any other member of the association. That at the time the Rundle-Spence Manufacturing Company took the assignment of the claim from the bankrupt against the city, to wit, on the 1st day of July, 1899, said Rundle-Spence Manufacturing Company knew that the said Eggert was behind in his payments with his creditors, and could obtain no goods or merchandise from members of the association except for cash. That the fact that Eggert was reported as being behind in his payments did not in itself indicate that he was insolvent; that the Rundle-Spence Manufacturing Company prior to the taking of the assignment of the said claim made no investigation or inquiry as to whether the said Eggert was solvent or insolvent, and that in obtaining the assignment of said claim against the city of Milwaukee the said Rundle-Spence Manufacturing Company practiced no fraud or deceit, nor did it act in collusion with the bankrupt.

(3) That the petition in bankruptcy herein was filed on the 17th day of August, 1899, and that the assignment of the claim against the city of Milwaukee by the bankrupt to the Rundle-Spence Manufacturing Company was made within four months prior thereto, and that on the 1st day of July, 1899, Louis A. Eggert, the bankrupt, was insolvent, and that the effect of the enforcement of the transfer by the bankrupt to the Rundle-Spence Manufacturing Company will enable it to obtain a greater percentage on its debt than other creditors of the same class.

(4) That the Rundle-Spence Manufacturing Company on the 16th day of September, 1899, filed its claim in the proceedings herein. in which it set forth that at the time of the filing of the petition in bankruptcy the bankrupt was indebted to it in the sum of thirteen hundred and seventy-three dollars and four cents ($1,373.04), and that it held as security therefor the assignment of the claim against the city of Milwaukee. That there is a conflict of testimony as to whether the assignment was taken in payment or as security, the bankrupt testifying that it was taken as security, and the treasurer of the Rundle-Spence Manufacturing Company that it was understood and agreed that it was taken in payment, although no receipt was given therefor, and that the claim was filed under a misapprehension. It not being necessary for the purpose of this decision, I do not here determine whether it was taken either in payment or as security.

### Conclusion of Law.

(1) As a conclusion of law, I find that the Rundle-Spence Manufacturing Company at the time of the obtaining of the assignment of the claim against the city of Milwaukee from the bankrupt, to wit, on the 1st day of July, 1899, had no knowledge of the fact that the said Louis A. Eggert, the bankrupt herein. was insolvent, and had no reasonable cause to believe that it was intended by the transfer to give it a preference.

Thereupon the referee ordered that the petition of the Rundle-Spence Manufacturing Company be granted, and that the trustee pay to that company the sum of $1,241.10, and upon such payment being made the claim of the Rundle-Spence Manufacturing Company filed in the proceedings of September 6, 1899, be expunged. Thereafter, on the 10th day of December, 1899, an application was made to the district court for a review of the order of the referee, upon which, on the 8th day of January, 1900, an order was made affirming the order of the referee. The petition further claims that by virtue of section 60, subds. "a," "b." of the bankrupt act (30 Stat. 544, c. 541), and under the findings of fact, the transfer was avoided, and that it was also repugnant to section 67e of that act, and asks for a review and reversal of the order of the district court.

102 F.—47

W. P. Bloodgood, for petitioner.
A. G. Weissert, for respondent.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts as above). The petition does not state the precise question of law presented to and ruled upon by the court below, and in this respect fails to follow the practice pointed out in Re Richards, 37 C. C. A. 634, 96 Fed. 935. We however gather from the petition that the construction of subdivisions "a" and "b" of section 60 of the bankrupt act is supposed to be involved, and this view obtains support from the opinion delivered by the court below upon affirming the order of the referee. In re Eggert, (D. C.) 98 Fed. 843. These subdivisions are, respectively, as follows:

"(a) A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. (b) If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

"Insolvency," as employed in this section, is thus defined by the act (chapter 1, § 1, cl. 15):

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

In this respect the act is widely different from the bankrupt act of 1867. There the term "insolvency" was construed to mean an inability to meet one's obligations as they matured in the ordinary course of business. The term "insolvency" in the present act is equivalent to the term "bankruptcy" in the former act. While, therefore, rulings under the former act are inapplicable in a certain sense, because of this difference in the meaning of the term "insolvency," they do apply so far as they determine the principles of law by which it is to be ascertained whether a creditor receiving a preference had reasonable cause to believe that the debtor had not at the time property sufficient, at a fair valuation, to pay all of his debts. In the leading case of Grant v. Bank, 97 U. S. 80, 81, 24 L. Ed. 972, it was said:

"It is not enough that a creditor has some cause to suspect the insolvency of his debtor, but he must have such a knowledge of facts as to induce a reasonable belief of his debtor's insolvency, in order to invalidate a security taken for his debt. To make mere suspicions a ground of nullity in such a case would render the business transactions of the community altogether too insecure. It was never the intention of the framers of the act to establish any such rule. A man may have many grounds of suspicion that his debtor is failing circumstances. and yet have no cause for a well-grounded belief of the fact. He may be unwilling to trust him further, he may feel anxious about his claim and have a strong desire to secure it, and yet such belief as the act requires may be wanting. Obtaining additional security or receiv-

ing payment of a debt under such circumstances is not prohibited by the law. Receiving payment is put in the same category, in the section referred to, as receiving security. Hundreds of men constantly continue to make payments up to the very eve of their failure, which it would be very unjust and disastrous to set aside. And yet this could be done in a large proportion of cases if mere grounds of suspicion of their solvency were sufficient for the purpose. The debtor is often buoyed up by the hope of being able to get through with his difficulties long after his case is in fact desperate, and his creditors, if they know anything of his embarrassments, either participate in the same feeling, or at least are willing to think that there is a possibility of his succeeding. To overhaul and set aside all his transactions with his creditors, made under such circumstances, because there may exist some grounds of suspicion of his inability to carry himself through, would make the bankrupt law an engine of oppression and injustice. It would in fact have the effect of producing bankruptcy in many cases where it might otherwise be avoided."

In Barbour v. Priest, 103 U. S. 293, 296, 26 L. Ed. 480, it is said:

"The obvious meaning of this provision is to require the concurrence of the creditor who gets security for his debt in the purpose of defeating the bankrupt act. Such person must have reasonable cause to believe the grantor in the conveyance was insolvent at the time it was executed, and that it was made with intent to defeat the bankrupt law. Both these must exist as facts which the grantee had reasonable cause to believe. And so careful was congress to protect the rights acquired by an honest creditor, that, unless bankrupt proceedings are commenced by or against the debtor within four months after such a preference, it should stand good, though the creditor knew the debtor was insolvent, and knew that the conveyance was intended to defeat the purpose of the bankrupt law in securing equality of distribution of the debtor's property. And this period was reduced by the act of 1874 to two months. It has never been denied, so far as we are advised, that it is necessary for the assignee of the bankrupt, in attacking such a conveyance, to prove the existence of this reasonable cause of belief of the debtor's insolvency in the mind of the preferred party."

In Stucky v. Bank, 108 U. S. 74, 2 Sup. Ct. 219, 27 L. Ed. 640, the court reaffirmed the doctrine of Grant v. Bank, and observed that:

"A creditor dealing with a debtor who he may suspect to be in failing circumstances, but of which he has no sufficient evidence, may receive payment or security without violating the bankrupt law. He may be unwilling to trust him further, he may feel anxious about his claim and have a strong desire to secure it, yet such belief as the act requires may be wanting. Obtaining additional security or receiving payment of a debt under such circumstances is not prohibited by law."

In the earlier case of Toof v. Martin, 13 Wall. 40, 20 L. Ed. 481, the court, discussing the character of evidence necessary to establish a reasonable cause to believe, observes:

"It is a general principle that every one must be presumed to intend the necessary consequences of his acts. The transfer, in any case, by a debtor, of a large portion of his property, while he is insolvent, to one creditor, without making provision for an equal distribution of its proceeds to all his creditors, necessarily operates as a preference to him, and must be taken as conclusive evidence that a preference was intended, unless the debtor can show that he was at the time ignorant of his insolvency, and that his affairs were such that he could reasonably expect to pay all his debts. The burden of proof is upon him in such case, and not upon the assignee or contestant in bankruptcy."

And on page 49, 13 Wall., and page 483, 20 L. Ed.:

"The statute, to defeat the conveyances, does not require that the creditors should have had absolute knowledge on the point, or even that they should

in fact have had any belief on the subject. It only requires that they should have had reasonable cause to believe that such was the fact. And reasonable cause they must be considered to have had when such a state of facts was brought to their notice in respect to the affairs and pecuniary condition of the bankrupts as would have led prudent business men to the conclusion that they could not meet their obligations as they matured in the ordinary course of business."

In Buchanan v. Smith, 16 Wall. 277, 308, 21 L. Ed. 286, the court says:

"Insolvency, in the sense of the bankrupt act, means that the party whose business affairs are in question is unable to pay his debts as they become due in the ordinary course of his daily transactions, and a creditor may be said to have reasonable cause to believe his debtor to be insolvent when such a state of facts is brought to his notice respecting the affairs and pecuniary condition of his debtor, in a case like the present, as would lead a prudent business man to the conclusion that he (the debtor) is unable to meet his obligations as they mature in the ordinary course of business. Such a party (that is, a creditor securing a preference from his debtor over the other creditors of the debtor) cannot be said to have had reasonable cause to believe that his debtor was insolvent at the time, unless such was the fact, but if it appears that the debtor giving the preference, whether a merchant or trading company, was actually insolvent, and that the means of knowledge upon the subject were at hand, and that such facts and circumstances were known to the creditor securing the preference as clearly ought to have put him, as a prudent man, upon inquiry, it would seem to be a just rule of law to hold that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact by reasonable inquiry. Ordinary prudence is required of a creditor under such circumstances, and, if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge it is reasonable to suppose he would have acquired if he had performed his duty."

In Wager v. Hall, 16 Wall. 584, 600, 21 L. Ed. 506, the court says:

"Nothing remains, therefore, to be re-examined, except the issue whether the respondents had reasonable cause to believe that the mortgagor was insolvent, and that the conveyance was made in fraud of the provisions of the bankrupt act. Proof that the respondents had actual knowledge that the mortgagor was insolvent at the time is not required to support the prayer for relief, but the allegation in that behalf is sustained if it appears that they had reasonable cause for such belief, as that is the language of the bankrupt act. Actual knowledge of the alleged fact is not made the criterion of proof in such an issue, nor is it necessary that it should appear that the respondents actually believed that the mortgagor was insolvent, but the true inquiry is whether they, as business men acting with ordinary prudence, sagacity, and discretion, had reasonable cause to believe that the debtor was insolvent, in view of all the facts and circumstances known to them at the time the conveyance was made. Unless the debtor was in fact insolvent, it cannot be held that such a grantee had reasonable cause to believe the allegation, but if it appears that the debtor was in fact insolvent as alleged, and that the means of knowledge were at hand, and that such facts and circumstances were known to the grantee as were clearly sufficient to put a person of ordinary prudence and discretion upon inquiry, it is well settled that it would be his duty to make all such reasonable inquiries to ascertain the true state of the case. Purchasers are required to exercise ordinary prudence in respect to the title of the seller, and if they fail to investigate when put upon inquiry, they are chargeable with all the knowledge which it is reasonable to suppose they would have acquired if they had performed their duty in that regard. Creditors have reasonable cause to believe that a debtor, who is a trader, is insolvent when such a state of facts is brought to their notice respecting the affairs and pecuniary condition of the debtor as would lead a prudent business man to the conclusion that he is unable to meet his obligations as they mature in the ordinary course of business. All

experience shows that positive proof of fraudulent acts between debtor and creditor is not generally to be expected, and it is for that reason, among others, that the law allows, in such controversies, a resort to circumstances as the means of ascertaining the truth, and the rule of evidence is well settled that circumstances altogether inconclusive, if separately considered, may by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof, which is a rule clearly applicable to the facts and circumstances disclosed in this record."

In Dutcher v. Wright, 94 U. S. 553, 557, 24 L. Ed. 131, the court says:

"Insolvency, in the sense of the bankrupt act, means that the party whose business affairs are in question is unable to pay his debts as they become due in the ordinary course of his daily transactions; and a creditor may be said to have reasonable cause to believe his debtor to be insolvent when such a state of facts is brought to his notice respecting the affairs and pecuniary condition of his debtor as would lead a prudent man to the conclusion that the debtor is unable to meet his obligations as they mature in the ordinary course of his business. Reasonable cause for such belief cannot arise unless the fact of insolvency actually existed; but if it appears that the debtor giving the preference was actually insolvent, and that the means of knowledge were at hand, and that such facts and circumstances were known to the creditor securing the preference as clearly ought to have put a prudent man upon inquiry, it must be held that he had reasonable cause to believe that the debtor was insolvent, if it appears that he might have ascertained the fact to be so by reasonable inquiry."

In Bank v. Cook, 95 U. S. 343, 346, 24 L. Ed. 414, the court says:

"It is scarcely necessary to discuss the authorities as to the meaning of the words 'having reasonable cause to believe the party to be insolvent.' When the condition of a debtor's affairs is known to be such that prudent business men would conclude that he could not meet his obligations as they matured in the ordinary course of business, there is reasonable cause to believe him to be insolvent. Knowledge is not necessary, nor even a belief, but simply reasonable cause to believe."

The supposed conflict between these cases is imaginary, not real. In Grant v. Bank, and the cases subsequent in point of time, the court was dealing with the facts spread upon the record, and did not find occasion to consider the facts and circumstances which, brought home to the creditor, would put him upon inquiry of his debtor's financial condition. In the cases antedating Grant v. Bank the question of notice arose and was considered. The resultant of all these decisions we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency; that it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose. In applying this principle to the present case, we encounter a difficulty not present in the cases referred to. By the terms of the statute which authorizes the present petition, we are restricted to a review in matter of law merely, and are bound by the facts found by the court below. We can only ascertain and determine

whether the facts found sanctioned the judgment of the lower court. The facts established are within narrow compass. They are that Eggert was insolvent; that he had failed to meet his obligations promptly as they matured; that, by the rules of the association of which the Rundle-Spence Manufacturing Company was a member, Eggert was not, while such debt remained unprovided for, entitled to purchase goods upon credit, but only for cash; that the assignment of the claim against the city was not given or received by collusion of debtor and creditor. The finding is somewhat wanting. There is failure to find that Eggert himself was conscious of his insolvency. The aggregate of his assets and of his liabilities is not given. The only fact brought home to the creditor, and which it is claimed should have aroused inquiry, is that he was somewhat behind in the prompt payment of his obligation. We cannot say, as a conclusion of law, that knowledge of that fact standing alone was sufficient to put the creditor upon inquiry. Indeed, it may be said that a majority of merchants absolutely solvent, in the sense in which the term is employed in the bankrupt act, are not at all times able to promptly meet their obligations as they mature. To hold that a creditor receiving payment of or security for a past-due debt is, by the mere fact of knowledge that the debt is past maturity, put upon inquiry of his debtor's inability to pay all his debts, and that under such circumstances he received payment or security at his peril, would be to put at hazard many business transactions and make the act oppressive. The fact of such inability, coupled with other facts and circumstances brought home to the creditor, might be sufficient to put him on inquiry; but this is the only fact from which the deduction is sought that the creditor had reasonable cause to believe his debtor insolvent, and, standing alone, it is insufficient to raise an inference of law that the creditor is chargeable with knowledge of the facts which inquiry would have elicited. The question whether one has reasonable cause to believe is essentially a question of fact, possibly of mixed fact and law. In actions at law the question, under proper instructions from the court, is one for the jury (Forbes v. Howe, 102 Mass. 427, 436); and in suits in equity, one for the court, as was the case in all the decisions above referred to. In Wilson v. Bank, 17 Wall. 473, 487, 21 L. Ed. 728, the court recognizes that the question is one of fact for the court or jury, and observed thereupon as follows:

"Undoubtedly very slight evidence of an affirmative character of the existence of a desire to prefer one creditor, or of acts done with a view to secure such preference, might be sufficient to invalidate the whole transaction. Such evidence might be sufficient to leave the matter to a jury, or to support a decree, because the known existence of a motive to prefer or to defraud the bankrupt act would color acts or decisions otherwise of no significance. These cases must rest on their own circumstances. But the case before us is destitute of any evidence of the existence of such a motive, unless it is to be imputed as a conclusion of law from facts which we do not think raise such an implication."

The referee found that the creditor had no knowledge of the fact that the debtor was insolvent, and had no reasonable cause to believe that it was intended by the transfer to give a preference. This is inaccurately stated as a conclusion of law. The action of an or-

dinarily prudent man under given circumstances is necessarily a question of fact, rather than one of law. We are bound by the finding of the court below.

The contention that the facts found show the transaction to be a scheme to hinder, delay, or defraud creditors within the meaning of section 67e, is without merit. The term hinder, delay, or defraud creditors had a well-defined and recognized meaning at the common law, and has that signification as employed in the act. The payment or securing to a creditor of an honest debt by the debtor is not to hinder, delay, or defraud creditors, within the well-established signification of the term.

It may be doubtful if congress designed to allow a review by this court upon original petition in cases in which an appeal is allowed, since the petition is only another mode of appeal for review of the action of the bankruptcy court, although limited to matter of law. It would seem more probable that this mode of review was intended to apply only to cases in which the right of appeal is withheld, since the remedy, whether by appeal or by petition, is summary and effective. We suggest, but do not find it needful to determine, the question. Being unable to say, as a conclusion of law, that mere knowledge that the debtor was behind in his payments puts the creditor upon inquiry, and charges him with notice of the facts which such inquiry might disclose, and being bound by the facts found by the court below, we are constrained to deny the petition.