[No. 4078. Decided January 18, 1902.]

J. A. STRATTON, *Trustee, Appellant, v.* EUGENE F. LAWSON, *Respondent.*

BANKRUPTCY — PREFERENCES — CREDITOR'S KNOWLEDGE OF INSOLVENCY.

The fact that a debtor was adjudged a bankrupt within a period of less than four months after giving a mortgage upon his real estate for a loan would not authorize the trustee in bankruptcy to set aside the conveyance as a fraudulent preference, when at the time of the transaction both parties believed the mortgagor to be solvent, his assets being apparently considerably in excess of his liabilities, and an investigation made by the mortgagee showed that the mortgagor's business sales amounted to from $25,000 to $30,000 per month, yielding a net profit of from $3,000 to $4,000.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge. Affirmed.

*Bausman & Kelleher,* for appellant.

*Struve, Allen, Hughes & McMicken,* for respondent.

The opinion of the court was delivered by

MOUNT, J.—On the 25th day of February, 1900, D. N. Holden and Lizzie Holden, his wife, were adjudged bankrupts by the district court of the United States for the district of Washington, Northern division, and, on March 9th, appellant was appointed trustee of their estate in bankruptcy and qualified as such trustee. Thereafter this action was brought in the state court against the respondent to set aside a deed of certain real estate executed and delivered by Holden and wife to respondent within four months prior to the time the petition in bankruptcy was filed. The cause was tried in the lower court and findings made in favor of defendant, and a judgment entered dis-

missing the action. From this judgment of dismissal plaintiff appeals.

The facts disclosed by the record are substantially as follows: The Holden & Wilson Furniture Company, a corporation under the laws of the state, had been engaged in a large furniture business in Seattle for a considerable time prior to December 1, 1900. D. N. Holden and one H. D. Thomas were the owners of all the stock in the corporation. Holden had agreed to purchase the interest owned by Thomas for $22,500. On November 5, 1900, Holden, under his agreement, was required to make a payment of $12,500 to Thomas. On this date Holden called upon respondent and explained to him that the Holden & Wilson Furniture Company was doing a large and prosperous business amounting to from $25,000 to $30,000 per month gross receipts, with a net profit of from $3,000 to $4,000; that he desired to borrow $11,500 for ten days, with which to purchase the stock of Thomas; that he could arrange to repay the money within the ten days and would not let respondent hold the certificates of the whole stock of the corporation as security for the repayment thereof; and if, at the expiration of ten days, Holden still desired the money as a loan, he and his wife would give respondent a mortgage on certain real estate belonging to them individually. Respondent examined the real estate and the stock of furniture belonging to the corporation, satisfied himself as to the profits of the business, and loaned Holden the $11,500 for ten days without interest, taking as security therefor the certificates of stock named for the limited time, but relying upon the promise of Holden to give the real estate security if the money was not repaid at the expiration of the ten days. Thereafter Holden was not able to repay the $11,500, and said to respondent that he had some bills

around the city to pay, and desired $3,500 additional therefor, stating that the real estate was good security for this amount and the $11,500 already borrowed. Respondent thereupon, on December 1, 1900, advanced to Holden $3,500, and Holden and wife executed and delivered to respondent a note for $15,000, secured by a mortgage on all their real estate. Respondent thereupon surrendered to Holden the certificates of stock in the corporation. It is admitted in this case that, at the time the money was loaned, and also at the time the security was given, respondent fully believed that the corporation was solvent and prosperous, and also in good faith believed that Holden and wife were fully solvent and were in all respects prosperous in their and each of their business affairs; and that respondent would not, on any other basis than his conviction of solvency of Holden and wife, have loaned the said sums of money. After the note and mortgage had been executed and delivered, but before they were recorded, respondent learned that certain creditors of the Holden & Wilson Furniture Company were pressing for payment of their claims, and on December 4th a petition was filed in the state courts by a creditor asking for the appointment of a receiver, and thereupon a receiver was appointed to take charge of the affairs of the Holden & Wilson Furniture Company. The assets of the corporation at this time were, in round numbers, $115,000, while the liabilities amounted, in round numbers, to $77,000. After the appointment of the receiver and on, to-wit, December 11th, Holden and wife deeded the property described in the mortgage to the respondent in satisfaction of the mortgage. When the affairs of the Holden & Wilson company were finally wound up by the receiver, the creditors thereof received eighty per cent. of their claims.

It is conceded that the value of the real estate mortgaged and the mortgage deed were about equal, so that there was no equity in the property belonging to the creditors of Holden and wife, provided the mortgage was valid. The sole question in the case, therefore, is as to the validity of the mortgage. Section 60b, National Bankruptcy Act of 1898 (30 St. at Large, 562), provides as follows:

"If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is agreed that respondent, at the time he advanced the money and took the mortgage, fully believed that the corporation and Holden and wife were each solvent and fully able to meet their obligations. The only question to be determined, therefore, is whether respondent had reasonable cause to believe that Holden and wife were insolvent at the time. Holden himself testifies, in substance, that he was solvent; that on the 3d day of December, the receiver, after going thoroughly over the books, informed him that his equity in the corporation was not less than $30,000, and that he believed that there was $30,000 or $40,000 more than sufficient to pay all the debts of the corporation. Respondent testified that at the time the $11,500 was loaned, and before the mortgage was given, he consulted the bookkeeper for the Holden & Wilson Furniture Company, and that the books showed a large business running from $25,000 to $30,000, with net profits of from $3,000 to $4,000 per month. There is nothing shown in the record as to the personal liabilities of Holden and

wife, nor is there any evidence of the fact that Holden and wife were individually insolvent, or that they owed any personal debts, until after the liability in the stock of the Holden & Wilson Furniture Company became a personal obligation by reason of the corporation not fully paying its obligations. Holden, after the receiver was appointed, believed that there would be no liability on the capital stock of the company, and that he would receive at least $30,000 after the debts were all paid. *In re Eggert,* 102 Fed. 735, the United States circuit court of appeals, Seventh circuit, after reviewing a number of cases from the supreme court of the United States, says:

"The resultant of all these decisions we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere non-payment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency; that it is not essential that the creditor should have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that if facts and circumstances with respect to the debtor's financial condition are brought home to him such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose."

Applying this rule to the present case, and conceding, for the argument, that respondent made no inquiry into the condition of the debtor at the time he loaned the money and at the time he received the security, yet it cannot be reasonably contended that he should have acquired information which Holden did not possess, or different information from that which the receiver acquired after carefully examining the books of account and taking an account of the stock of furniture on hand. This information was

that the corporation of which Holden was the sole stock-holder was perfectly solvent under the Bankruptcy Act, *supra,* which provides (§ 1, subd. 15) :

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts."

The aggregate of all the property belonging to the corporation at a fair valuation two days after the mortgage was executed and delivered was more than sufficient to pay all the debts of the corporation and $30,000, in excess thereof, which represented Holden's equity therein. In the complaint filed against the corporation by a creditor having a claim of $1,184.50, it is alleged for the appointment of the receiver, "that the defendant is indebted to various other creditors in the sum of about $60,000 ; that its assets are of the value of about $100,000, and that defendant is threatened with litigation that may dissipate and destroy said assets and the business of defendant." Respondent, even if he knew there were $77,000 in debts outstanding against the corporation, and that some of the creditors were pressing for their claims, cannot be reasonably chargeable with knowledge that Holden and wife were insolvent under the Bankruptcy Act, *supra.* If they were not insolvent, Holden cannot be charged with reasonable cause to believe that they were insolvent, or that a preference was intended when the mortgage was given, or that there was any intent on the part of the respondent to avoid the provisions of the bankruptcy law. Respondent naturally desired security for his money, and under the

evidence in the case cannot be charged with having obtained a preference.

The cause is therefore affirmed.

REAVIS, C. J., and DUNBAR, ANDERS, FULLERTON, WHITE and HADLEY, JJ., concur.