WILLIAM FORD UPSON, as Trustee in Bankruptcy of the Property of JAMES F. WELCH, Bankrupt, Respondent, *v.* THE MOUNT MORRIS BANK, Appellant.

*Bankruptcy — what constitutes insolvency — what is a preferential payment in violation of the Bankruptcy Law — what proof is competent in respect thereto — effect of an attorney giving his own check for the indebtedness of the alleged bankrupt — fractions of a day taken cognizance of.*

Under section 1 and subdivisions a and b of section 60 of the Bankruptcy Law a person is not insolvent within the meaning of that act merely because he is unable to pay his obligations as they mature or because actions are pending against him owing to his inability to make present payment of his indebtedness, and such facts if known to a creditor would not, as a matter of law, constitute reasonable cause for believing that a preference was intended in the case of a payment by a debtor in such circumstances.

In an action by a trustee in bankruptcy to recover an alleged preferential payment made by the bankrupt, it is essential for him to show actual insolvency on the part of the bankrupt at the time of the payment, and that the creditor knew or had reasonable cause for believing, acting as a reasonably prudent man, that a preference was intended, but it is not necessary for him to show fraud or an intent on the part of the bankrupt to make a preferential payment.

Where a firm of attorneys deliver to a bank, in payment of a client's note held by the bank and then surrendered to the attorneys, a check drawn by the attorneys on their individual account, at a time when the attorneys do not hold sufficient of the client's funds to pay the check, the client's indebtedness to the bank on the note becomes canceled upon the delivery of such check and note, notwithstanding that the bank agreed at the request of the attorneys, which was not, however, made a condition of the delivery of the check, to refrain from collecting the check for a day or so.

It is doubtful whether such a transaction operates as a transfer of property from the client to the bank within the meaning of the Bankruptcy Law.

The court will take cognizance of fractions of a day in determining whether a bankrupt was insolvent when he made an alleged preferential transfer of his property to a creditor.

In an action brought by a trustee in bankruptcy to set aside an alleged preferential transfer to one of the bankrupt's creditors, the creditor is entitled to show all information communicated to it and all knowledge possessed by it indicating the bankrupt's solvency at the time the transfer was made.

When, in such an action, the questions whether the bankrupt was solvent at the time the transfer was made, and whether the creditor had reasonable cause for believing that he was then solvent are questions of fact which should be submitted to the jury, considered.

APPEAL by the defendant, The Mount Morris Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of June, 1904, upon the verdict of a jury rendered by direction of the court after a trial at the New York Trial Term.

*C. H. Payne*, for the appellant.

*Jesse Stearns*, for the respondent.

LAUGHLIN, J.:

The action is by a trustee in bankruptcy of one Welch to recover a payment of $5,000 alleged to have been made by the bankrupt to the defendant, within four months of the filing of the petition, upon the ground that it constitutes an unlawful preference. The verdict was directed upon the theory that at the time the payment was made Welch was insolvent within the meaning of that term as used in the Bankruptcy Law (30 U. S. Stat. at Large, 544, § 1), and that the effect of the transfer was to pay a greater part of the indebtedness owing to the defendant than his remaining assets would enable him to pay the remaining creditors (Id. 562, § 60, subd. a), and that the defendant or its agents had reasonable cause to believe that the payment was intended as a preference (Id. 562, § 60, subd. b). The defendant excepted to the direction of the verdict and asked leave to go to the jury upon the questions as to whether Welch was insolvent and whether the defendant knew of the insolvency, and that the payment would constitute a preference. Unless the facts established these propositions as matter of law, the court erred in directing a verdict.

Section 1 of the Bankruptcy Law provides that a person shall be deemed insolvent within the provisions of the act " whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed or removed or permitted to be concealed or removed with intent to defraud, hinder or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts." Subdivision a of section 60 declares, among other things, that a person shall be deemed to have given a preference " if being insolvent " he has " made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will

be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class." Subdivision b of section 60 provides that if a bankrupt shall have given a preference within four months before the filing of the petition or thereafter and before the adjudication " and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property, or its value from such person."

Under these provisions it is clear that a person is not insolvent merely because he is unable to pay his obligations as they mature, or because actions are pending against him owing to his inability to make present payment of his indebtedness, and such facts, if known to a creditor, would not as matter of law constitute reasonable cause for believing that a preference was intended in the case of a payment by a debtor in such circumstances. (*Matter of Eggert*, 3 Am. Bank. Rep. 541; S. C., 4 id. 449.) It is essential for the trustee in an action to recover a preferential payment to show actual insolvency on the part of the bankrupt at the time of the payment, and that the creditor knew or had reasonable ground for believing, acting as an ordinarily prudent man, that a preference was intended, but it is not necessary to show fraud or an intent on the part of the bankrupt to make a preferential payment. (*Matter of Eggert*, 3 Am. Bank. Rep. 541; S. C., 4 id. 449; *Benedict* v. *Deshel*, 177 N. Y. 1.) Welch had an account with the Mount Morris Bank and for a period of about three years it had been accustomed to extend credit to him by discounting his paper. He was conducting a lumber yard and planing mill in the city of New York. On the 12th day of January, 1900, he was indebted to the bank on matured notes aggregating $13,000. On that day it commenced two actions against him on these notes in which he made default, but his attorneys opened negotiations with the attorneys for the bank concerning his business affairs and what he claimed to be temporary financial embarrassment. His business was interrupted by a fire from which he sustained a loss of about $10,000. His attorneys had collected part of the insurance moneys and held the same for him. On the

27th day of February, 1900, they gave their personal check to the attorneys for the bank for $5,000 in payment of one note for $5,000, upon which one of the actions had been brought, and this note was thereupon surrendered to the attorneys for Welch. The account of the attorneys for Welch was good for the amount of the check, but on account of the fact that they did not hold that amount of their client's money they requested the attorneys for the bank to refrain from depositing the check for collection for a day or so, but did not make it a condition of the delivery of the check. This request was voluntarily complied with. Late in the afternoon of the same day, and after the delivery of the check and the surrender of the note, Welch executed and delivered to one Livermore, the vice-president of the bank, a deed of trust of substantially all his property for the benefit of creditors. Livermore thereupon took possession of the property and continued to operate the mill as trustee. On the twenty-sixth day of June, one day less than four months thereafter, an involuntary petition in bankruptcy was filed against Welch, charging as acts of bankruptcy, among other things, that he had while insolvent made this payment of $5,000 to the bank and made this transfer to Livermore. On the fifth day of November thereafter, on the trial of the issues in the Bankruptcy Court, it was adjudicated that, excluding the property which he transferred to Livermore, he was at the time of making that transfer and at all times thereafter insolvent. The trial court held that this decision established conclusively the insolvency of the bankrupt at the time the payment of $5,000 was made to the bank. The check, although dated on the day of its delivery, was not in fact paid until the second day of March. If the indebtedness to the bank was not paid until the money was received on the check, that being subsequent to the time of the transfer to Livermore, the decision in this regard would be correct. If the check had been that of the bankrupt or if it was drawn upon moneys belonging to him, doubtless the transfer would not have taken place until the check was paid. (*Matter of Lyon*, 7 Am. Bank. Rep. 412; S. C., 10 id. 25.) But here the check was drawn by the attorneys on their individual account, which may have been increased by a deposit of some of the insurance moneys, but the evidence shows that they did not hold sufficient of their client's funds to pay it. We are of opinion

that the bankrupt's indebtedness to the bank on the $5,000 note was canceled when the attorneys gave their check therefor and the note was surrendered. (*Whitbeck* v. *Van Ness*, 11 Johns. 409.) It is doubtful whether there was any transfer from the bankrupt to the appellant.

It is further urged that the rule that the law takes no notice of the fractions of a day is applicable, and that the decision that the transfer to Livermore left Welch insolvent established his insolvency throughout the day, which covers the time when the check was delivered to the bank. We are also of opinion that this proposition is untenable. It is clear that it does not follow that because he was insolvent after conveying nearly all his remaining property late in the afternoon that he was likewise insolvent before conveying it and when the note was paid. We are of opinion that this is a case where the time of the transaction, although it involves a consideration of the fractions of a day, must be considered. (*Westbrook Mfg. Co.* v. *Grant*, 60 Maine, 88.) It necessarily follows that the question as to whether Welch was insolvent at the time the check was given was open to inquiry. On the trial the court excluded competent evidence offered by the defendant tending to show his solvency and exceptions were taken by the defendant to these rulings.

Moreover, we think the court erred in excluding evidence offered by the defendant tending to show that it believed and had reasonable ground for believing that Welch was solvent at the time the check was delivered in payment of the note. It is true that he was temporarily financially embarrassed and unable to pay his obligations as they accrued. The defendant, however, was the only creditor who had instituted legal proceedings for the collection of any claim. The defendant was doubtless aware of this financial embarrassment for its attorneys and one of its officers participated in the negotiations which led to the transfer of the property in trust to the latter. It was apparently confidently represented by Welch, however, that his assets exceeded his liabilities by from $50,000 to $75,000. It is evident that he had as a basis for obtaining credit made written representations to the bank only a short time before concerning his assets and liabilities, indicating that he was solvent in a large amount. In these circumstances it could not be said *as*

*matter of law* that the defendant had reasonable cause for believing that he was insolvent at the time it received the check in payment of the note. That was a question of fact and should have been presented to the jury and all evidence tending to show information communicated to the defendant or knowledge on its part indicating his solvency should have been received. Material evidence on this point was offered by the defendant and excluded and it excepted to the ruling.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and MCLAUGHLIN, JJ., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.