## In re SUTHERLAND CO., Inc.

### (District Court, D. Massachusetts. October 30, 1917.)

### No. 22192.

1. BANKRUPTCY ☞165(3)—PREFERENCES—NATURE OF TRANSACTION.

Where claimant agreed to advance $1,000 to the bankrupt, if the bankrupt would execute a mortgage securing such advance, and also securing loans previously made by the claimant's wife, aggregating $3,000, but the transaction was carried out by the claimant's brother advancing $1,000 on the claimant's behalf, and claimant, when the mortgage was executed, advancing $1,000, which was then paid to the wife and the brother, nothing was gained by this indirection, and the transaction as respected the question of preference was in legal effect the same as if the mortgages had been made directly to the wife and claimant.

2. BANKRUPTCY ☞166(4)—PREFERENCES—NOTICE OF INSOLVENCY—DUTY OF INQUIRY.

A person taking a mortgage from one subsequently becoming a bankrupt to secure loans previously made was bound to draw such inferences as would naturally follow from the facts coming to his attention; and where those facts would ordinarily excite suspicion as to insolvency and cause inquiry, he was bound by such knowledge as a reasonable inquiry would have furnished.

3. BANKRUPTCY ☞166(4)—PREFERENCES—CAUSE TO BELIEVE INSOLVENCY.

Claimant, who advanced $1,000 to the bankrupt, taking a mortgage on the bankrupt's fixtures and stock in trade of its retail business, securing such loan and loans of $3,000 previously made by his wife, knew that the debtor's business had been bad, that it owed a bank substantial sums and had been in pressing need of ready money and had repeatedly borrowed, sometimes in such small amounts as to indicate that it had little or no cash on hand. He was apparently suspicious as to the validity of the transaction, as evidenced by his inquiry of the attorney drawing the mortgage whether a mortgage for cash was good, and the transaction was carried out by having his brother advance $1,000 on his behalf, and by then advancing $4,000 when the mortgage was executed which was then paid to the wife and the brother. Held, that he had reasonable cause to believe the bankrupt was insolvent, especially as it is common knowledge that a retail dealer only mortgages his stock in trade and fixtures as a last resort, and that the immediate effect of doing so is to destroy all further credit.

4. BANKRUPTCY ☞165(3)—PREFERENCES—PAYMENT OF CONSIDERATION FOR TRANSFER.

Where a loan to a bankrupt was expressly conditioned upon the giving of a mortgage to secure it and prior loans, and would not have been made without such agreement, and, though five or six days elapsed between the delivery of a check for the amount of the loan and the execution of the mortgage, the check was held during part of this time awaiting the approval of the bankrupt's directors of the agreement to give the mortgage, and the parties were not in the same city or state, the giving of the mortgage was substantially contemporaneous with the making of the loan and a part of the same transaction, so as to prevent it constituting a preference so far as such loan was concerned, and it was immaterial that the amount of the loan was first advanced by the mortgagee's brother on the mortgagee's behalf, and that when the loan was executed the mortgagee made a further advance, which was then paid to the brother.

5. BANKRUPTCY ☞165(3)—PREFERENCES—PAYMENT OF CONSIDERATION FOR TRANSFER.

Where a mortgage was given by one subsequently becoming bankrupt to secure a loan then made and prior loans, the security for the new loan was

not invalid by being consolidated with the preferential security for the prior loans.

In Bankruptcy. In the matter of the Sutherland Company, Incorporated, bankrupt. On review of an order of the referee. Order vacated.

Clinton Gowdy, of Springfield, Mass., for mortgagee.
Scott Adams, of Springfield, Mass., for trustees.

MORTON, District Judge. The Sutherland Company, which carried on a retail dry goods shop in Holyoke, was adjudicated bankrupt. Charles J. Holcomb filed with the referee a petition alleging that he held a mortgage for $4,000 on its stock in trade and fixtures, and praying that this mortgage might be declared a valid lien on the proceeds of said property, which had been sold by the trustees. The learned referee made an order granting the prayer of the petition, and the present review proceedings were taken by the trustees and certain creditors. The evidence is fully reported.

[1] It is clear that the mortgage was arranged for the purpose of paying or securing Mrs. Holcomb's previous loans to the bankrupt, and that Holcomb so understood it. He testifies:

"Q. That is, if the Sutherland Company would give a mortgage for $4,000, which would secure your wife for the $3,000, then you would see that they had the extra $1,000? A. That was it."

And again:

"The reason I got that $1,000 was to secure my wife for the $3,000."

The transaction was not on its face carried out in exactly the way stated. Holcomb actually advanced $4,000, and, in accordance with the agreement between him and the mortgagor the latter immediately applied the loan to the payment of Holcomb's wife and brother. The mortgagee gains nothing by this indirection (Roberts v. Johnson, 151. Fed. 567, 81 C. C. A. 47, 18 Am. Bankr. R. 132; Bank of Wayne v. Gold, 146 App. Div. 296, 130 N. Y. Supp. 942, 26 Am. Bankr. R. 722); and the legal effect of what was done is, in my opinion, the same as if mortgages had been made directly to wife and to C. J. Holcomb. The brother, A. R. Holcomb, was not at any time a creditor of the company; and the payment to him was made on C. J. Holcomb's account. The latter acted in his wife's interest and his own in taking the mortgage.

[2] As to the $3,000 paid to Mrs. Holcomb: The effect of the transactions was to give her a preference; and the decisive question is whether Mr. Holcomb, at the time when he took the mortgage, had reasonable cause to believe that the Sutherland Company was then insolvent. He was bound to draw such inferences as would naturally follow from the facts coming to his attention; and, where those facts would ordinarily excite suspicion as to solvency and cause inquiry, he is to be held to such knowledge as a reasonable inquiry would have furnished. Anything "sufficient to excite attention and put a party on inquiry is notice of everything to which such inquiry would have led." In re Knopf (D. C.) 144 Fed. 245, 16 Am. Bankr. R. 433. See, too, In re Eggert, 102 Fed. 735, 43 C. C. A. 1 (C. C. A. 7th Cir.) ; Remington on Bkcy. (2d Ed.) § 1409, collecting cases.

[3] Holcomb knew that the debtor's business had been bad, that it owed the bank substantial sums, that it had been in pressing need of ready money for several months, and that it had repeatedly borrowed from his wife, sometimes in such small amounts as to indicate that it had little or no cash on hand. He evidently supposed that it had no property except the stock and fixtures in its store, which was the fact. He had been in the store before he took the mortgage, and was able to see, although he might not be able to value correctly, what that property was. The notice afforded by the transaction itself is not to be overlooked. It is common knowledge that a retail shopkeeper only mortgages his stock in trade and fixtures as a last resort, and that the immediate effect of doing so is to destroy all further credit. If the mortgagor has other substantial debts and no other property, and these facts are known to the mortgagee, as they were in this instance, there is ample cause to excite his suspicion and to put him on his inquiry. Walbrun v. Babbitt, 16 Wall. 577, 21 L. Ed. 489; Remington on Bkcy. (2d Ed.) § 1496. The question how the mortgagor expects to pay his other creditors after having mortgaged all his property to one, can hardly fail to suggest itself. Holcomb made no inquiry whatever, and did not even ask the mortgagor for a statement of financial condition. Reasonable investigation on his part would have disclosed that the Sutherland Company was insolvent, that the mortgage would work a preference, and would probably cause bankruptcy.

It is clear that Mr. Holcomb himself was not free from suspicion as to the validity of the transaction. He states his position as follows:

"I knew he (Sutherland) was pressed for money to meet his obligations; when I took that mortgage and raised that $1,000 I understood the bank was willing to carry this other money, and that if I could help them (the Sutherland Company) raise money enough to float along until they could (do) better, that they would be able to pull through and everything would be all right. I never thought there would be any trouble. If I had, I should not have raised the $1,000 for them. From what I heard up to the bank they was willing to let what they had lay." (Transcript, page 92.)

His inquiry of his attorney, Mr. Snow, who drew the mortgage, whether a mortgage for cash was good is significant. The doubt which led to it obviously was whether such a mortgage would be good in the event of bankruptcy. The carefully prepared and indirect way in which the matter was gone at is, to my mind, strongly indicative of a belief on Holcomb's part that, if done in the usual, straightforward manner, the transaction would not stand.

It is true that Mr. Holcomb does not appear to have had any information as to the total indebtedness of the Sutherland Company, nor as to the value of its assets. Knowledge on those points can but seldom be brought home to persons accepting preferential payments; nor is it necessary. "Reasonable cause to believe" in such cases is usually inferred from circumstances very similar to those which exist here; i. e., from inability to pay bills in the usual course of business as they mature, from poor business, and from transactions of a character not ordinarily resorted to by solvent traders. Thomas v. Adelman (D. C. N. Y.) 136 Fed. 973. Holcomb and Sutherland testify that they expected the company to pull out and continue; but the fact remains

that it was deeply insolvent. Sutherland knew that it was so. Holcomb did not know it; but upon the facts which are clearly established, he had, as it seems, to me, reasonable cause to believe so; and it is therefore unnecessary to decide whether the learned referee erred in not finding certain further facts contended for by the trustees.

The mortgage, so far as it secures the $3,000 loaned by Mrs. Holcomb, is invalid under section 60 of the Bankruptcy Act.

[4] There remains the further question whether the mortgage is also invalid for the $1,000. There can, I think, be no doubt that the loan of this sum of C. J. Holcomb to the bankrupt was expressly conditioned upon the giving of a mortgage to secure both it and the $3,000, and that without such agreement the $1,000 would not have been advanced. Both parties understood that the mortgage when made should cover the stock in trade and fixtures of the company. Five or six days elapsed between the delivery of the check for $1,000 to Mr. Sutherland and the execution of the mortgage. During part of that time he was holding the check awaiting the approval of his codirectors of the agreement to give a mortgage which he had made. It was not until after they had assented that the check was negotiated; and within three or four days after that the mortgage was given. The parties were not in the same city, nor even in the same state, and under all the circumstances it seems to me that the giving of the mortgage is to be regarded as substantially contemporaneous with the making of the loan, and as a part of that same transaction. In Dean v. Davis, 242 U. S. 438, 37 Sup. Ct. 130, 61 L. Ed. 419, seven days elapsed between the loan and the mortgage given to secure it, but it was held that "the mortgage was given to secure Dean for a substantially contemporary advance."

The facts that the $1,000 was in the first instance advanced by A. R. Holcomb to the bankrupt on his brother's account, and that, at the time when the mortgage was made, C. J. Holcomb advanced another $1,000, which was paid by the bankrupt to A. R. Holcomb in settlement of the former advance, seem to me not to affect the result. As before stated, A. R. Holcomb was never a creditor of the bankrupt. What was done carried out the understanding between Sutherland and C. J. Holcomb, viz. that, if the latter would loan $1,000 more, a mortgage would be given to secure both it and the prior loans from Mrs. Holcomb. As has been said with reference to the $3,000, it is the substance of the transaction, not its form, which is to be regarded in determining questions of this character.

[5] The mortgage was in effect given to secure two sums, viz. the $1,000 presently advanced, and the $3,000 previously loaned. It was invalid as to the latter sum, because it effected a preference, contrary to the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544); but no moral turpitude was involved. In Seligman v. Gray, Trustee, 227 Fed. 417, 142 C. C. A. 113 (C. C. A. 1st Cir.), it was held that one who advanced money on a mortgage, knowing that the proceeds were to be used by the mortgagor to make preferential payments in contemplation of bankruptcy, lost his security, but might prove as an unsecured creditor for the sum so loaned. In the present case, if, instead of a single mortgage, two had been given, one for each sum,

that for the $1,000 would clearly be good. The security for the new loan, which, so far as appears, was for proper purposes and presumably increased the debtor's estate, was not invalidated by being consolidated with the security given for past advances. City National Bank v. Bruce, 109 Fed. 69, 71, 48 C. C. A. 236 (C. C. A. 4th Cir.); Stedman v. Bank of Monroe, 117 Fed. 237, 54 C. C. A. 269 (C. C. A. 7th Cir.)

There is another possible view of the transaction, viz. that the mortgage was given for an entirely independent loan of $4,000, made with the understanding that the proceeds of it should be used to pay Mrs. Holcomb's claim for $3,000 and Mr. Holcomb's claim for $1,000, loaned a few days previous. So considered, the mortgage would be invalid as a fraudulent conveyance under section 67e (Comp. St. 1916, § 9651) as to both sums, because each would be regarded as an unconditional loan made and completed before the mortgage and at the time of the mortgage, an outstanding debt on the same footing as all other indebtedness of the bankrupt. The established facts do not, as it seems to me, support this view.

The order of the referee is vacated, and an order may be entered in accordance with the foregoing opinion.