GOLDMAN et al. v. SMITH (FRANKS, Intervener).

(District Court, D. Kentucky. February 9, 1899.)

1. BANKRUPTCY—PLEADING—DEMURRER TO ANSWER.
  An issue as to the sufficiency of an answer to a petition in involuntary bankruptcy cannot be raised by demurrer. Petitioning creditors, objecting to the answer on this ground, must set the case down for hearing on the petition and answer, according to the rules of equity practice.

**2. SAME—ACTS OF BANKRUPTCY—PREFERENCE.**

Where an insolvent merchant transferred his stock in trade to a creditor, part of the consideration being a payment made by the latter to a bank to make good the merchant's overdrawn account at the bank, the creditor having verbally agreed with the bank to be responsible for such overdrafts, *held*, that the transfer was an act of bankruptcy, being made with intent to prefer either the creditor advancing the money (if the debt was considered as due to him), or else the bank, by means of the payment of the overdraft by the creditor as a surety or guarantor, and his reimbursement by the bankrupt.

**3. SAME—PARTIES—INTERVENTION BY CREDITOR.**

Where a petition in involuntary bankruptcy alleges the giving of an unlawful preference to a particular creditor of the bankrupt, that creditor may, on his own petition, intervene and be made a party defendant, with leave to plead to the petition.

In Bankruptcy. Petition in involuntary bankruptcy by Goldman, Beckman & Co. and other creditors against Newton M. Smith, with petition by A. C. Franks, an alleged preferred creditor, for leave to intervene and be made a defendant.

Sidney G. Stricker, for petitioning creditors.

W. M. Fenley, for bankrupt.

A. G. De Jarnette, for intervener.

BARR, District Judge. Goldman, Beckman & Co., and other creditors of Newton M. Smith, filed a petition to declare the defendant, Newton M. Smith, an involuntary bankrupt. The grounds set out in the petition are that Smith, being the owner of a stock of goods of the value of about $3,000, transferred and conveyed the same to his brother-in-law, A. C. Franks, with intent to hinder, delay, and defraud his creditors; and, second, that Smith, being insolvent, transferred said stock of goods and merchandise, which were located in his store, in Grant county, to said A. C. Franks, upon the consideration of an existing debt alleged to be due and owing from said Smith to said Franks, with intent to prefer said Franks over and above all of his other creditors. There are other grounds alleged, but these are the only grounds needed to be considered upon the pending question. Process went upon this petition against Smith, and he appeared and filed on January 4, 1899, an answer thereto, and subsequently filed an amended answer. This answer, as amended, has been demurred to by the plaintiffs on the ground that said answer does not state facts sufficient, in law, to constitute a defense to the petition.

If we are to apply the rules of equity practice to proceedings in bankruptcy,—and we understand these are to be applied (see Sup. Ct. Rule 37, 18 Sup. Ct. x.),—the sufficiency of an answer cannot be raised by a demurrer, but it can only be done by setting the case for hearing upon the bill and answer. Walker v. Jack, 31 C. C. A. 462, 88 Fed. 576, and Grether v. Wright, 23 C. C. A. 500, 75 Fed. 743. In the latter case the court of appeals, by Judge Taft, uses this language:

"A demurrer to an answer is unknown to the equity practice in the federal court, as it was unknown to the practice of the high court of chancery in England. Crouch v. Kerr, 38 Fed. 549; Banks v. Manchester, 128 U. S. 244,

9 Sup. Ct. 36; Travers v. Ross, 14 N. J. Eq. 254; Winter v. Claitor, 54 Miss. 341; Edwards v. Drake, 15 Fla. 666; 1 Daniell, Ch. Prac. 542. The only way by which the sufficiency of an answer to a bill in equity can be tested is by setting the case down for hearing upon the bill and answer, the effect of which is an admission by the plaintiff of all the averments of fact properly pleaded in the answer, and a waiver of any right to contest them by replication and proof. Barry v. Abbot, 100 Mass. 396; Brown v. Mortgage Co., 110 Ill. 235; Stone v. Moore, 26 Ill. 165. If, therefore, any objection had been taken to the demurrer filed to the answer, it must have been stricken from the files; but as no objection was taken in the court below, and as no objection is made on the hearing in this court to the form of proceedings, we should treat the demurrer filed by the plaintiff as an application to the court to set down the case for hearing upon the bill and answer, and consider the decree as if it had been entered upon such hearing. Barry v. Abbot, 100 Mass. 396."

As counsel on both sides have argued this demurrer as raising the question of the sufficiency of the answer, the court should dispose of the question as counsel have made it,—as, in effect, raising the question whether, the answer being taken for true, the defendant, Smith, should be declared an involuntary bankrupt. In this answer the defendant makes this general denial:

"He denies that on or about December 5, 1898, or at any other time, he transferred and conveyed to A. C. Franks a stock of general merchandise, of the value of $3,000, or other value, consisting of clothing, boots, shoes, rubbers, dry goods, groceries, notions, etc., or any goods or merchandise whatever, with intent to hinder, delay, or defraud his creditors, or to prefer said Franks to the exclusion of other creditors. Denies that on or about December 5, 1898, or at any other time, he transferred the stock of goods of which he was then the owner, consisting of the items aforesaid, or other items, of the value of $3,000, or other value, located within his store, at Stewartsville, Grant county, Ky., or other place, to said A. C. Franks, or other person, upon a pretended consideration of a pre-existing debt alleged to be owing by him to said A. C. Franks, or other person, with intent to prefer said Franks above all or any creditor or creditors of this defendant. The defendant says that on the 29th day of November, 1898, he did sell, transfer, and convey to said A. C. Franks a certain stock of dry goods, notions, boots, shoes, clothing, etc., then located in his store, at Stewartsville, Ky., of the value and for the consideration of $2,700; that the consideration of said purchase and sale was the agreement of said Franks to pay off and discharge a mortgage debt held by Mrs. Magerhance for $1,367, about $806 checks issued by this defendant, which said Franks had recently taken up at the request of the defendant, and $525 in cash paid by said Franks to defendant at the time of said sale. He says this was a valid transaction, without any intent or thought of hindering or delaying any of his creditors, or preferring said Franks. He says said mortgage was an existing lien upon his stock of merchandise, and petitioners all had notice of same long before and at the time they sold this defendant the goods for which he is indebted to them as stated in their petition. Said mortgage was executed and delivered more than six months prior to the filing of the petition herein. He says the $806 which he paid said Franks in the transfer to him of said merchandise was a debt created by the payment of defendant's checks, given mostly to the petitioners, and which defendant did not have the funds to meet, and said Franks paid same as an accommodation; and, as this defendant's creditors got the money paid upon said checks, he did not know it was wrong or in violation of law to pay it back to said Franks in the sale of the goods. Defendant says the balance of said purchase price, to wit, $525, was paid him in cash by said Franks at the time, and simultaneously with, and as part of the consideration of, the sale and transfer of said stock of goods, and insists that there was no thought or intention of preferring said A. C. Franks, or other person, in the sale and transfer aforesaid. Defendant admits that at the time of the sale and transfer he had not sufficient property to pay his debts, but says his credit in his neighborhood and elsewhere was good, and he thought he would in a short

time be able to pay all of his debts. He sold said stock of goods because he believed he could make more money in trading in stock,—a business which he had successfully followed before he embarked in the mercantile business."

And in the latter part of his answer he makes this allegation:

"Defendant again admits that, at the time he sold his said stock of merchandise to A. C. Franks, he had not sufficient property to pay his debts, but denies that in the transfer and sale of said merchandise, or any other matter or form, he committed an act of bankruptcy, unless the fact that he was unable to pay his debts, and the further fact that he repaid said Franks, in said sale, the money he had advanced to meet checks given by this defendant to his creditors aforesaid, shall be held an act of bankruptcy."

Defendant also files with his answer a schedule of all property owned by him just prior to the date of the sale, and a schedule of his indebtedness. These schedules show that, including all of the property,—that which was transferred to Franks, and all other,—he was at the time hopelessly insolvent.

Upon the 27th of January, after the demurrer was filed, Smith tendered an amended answer, in which he makes this allegation:

"That his attorney, in preparing the original answer, by mistake alleged that the $806 paid by A. C. Franks as part of the purchase price of said stock of goods was paid in taking up certain checks given by defendant to his creditors, and now corrects said answer, and states that the payment of said $806 was made by said Franks at the time of, and as a part of the purchase price of said goods, by paying an overdraft of the defendant to the Bank of Williamstown; checks for said overdraft having been given as stated in the original answer. Defendant further says that said Franks had agreed verbally with said bank to be responsible for the overdrafts aforesaid."

Although this amendment was not filed by leave of court, and was after the demurrer, still both parties have assumed in their arguments that the amendment is part of the answer, and it will be considered in that way by the court.

It seems to us, notwithstanding the general denial of this answer, the facts alleged and admitted show that the defendant has committed an act of bankruptcy, in making the transfer to Franks. It is clearly shown that the defendant, Smith, was insolvent, not only within the definition of insolvency given in the bankrupt act, viz. "that the aggregate of his property, exclusive of any property which he may have transferred, concealed or removed, or permitted to be transferred, concealed or removed, with intent to hinder or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts," but that, including this property, he was at the time hopelessly insolvent. It is equally clear that the allegations and admissions of this answer show an intent upon the part of Smith to prefer one of his creditors over his other creditors, whether that creditor be Franks himself, or whether it be the Bank of Williamstown. If we consider, as first alleged, that the $806 was a debt to Franks, that it was a preference to Franks is quite clear, and the knowledge of the preferred creditor of the insolvency and the purpose of the sale seems as certain. If, however, we consider the overdraft of Smith as held by the Bank of Williamstown, from the allegations of the answer it must be quite apparent that the payment of Smith's checks by the bank, and the creation of the overdraft, were upon the credit of Franks, and that

he was the obligor to the bank, and bound, as such, to pay the debt. In this view, the overdraft was Frank's debt. If it be considered that he was a mere guarantor, and the statute of frauds applies, we do not see that this makes any difference upon the question of bankruptcy, since the sale and transfer were to pay that debt, and by this means the debt has been paid, and Smith's creditor, whoever he may be, in law, was preferred. We conclude, taking the entire answer, that it does not present a good defense, and that upon the face of the pleadings the petitioners are entitled to an adjudication adjudicating Smith a bankrupt.

We do not see that the Kentucky act, as embodied in section 1910 of the Kentucky Statutes, has any application to this question, since the inquiry is whether or not the defendant, Smith, has committed acts of bankruptcy, under the provisions of the bankrupt act. Under the Kentucky law, as we understand it, if a preference is not attacked by a creditor within six months, the preference would be good; and, where there is a preference prohibited by the Kentucky statute, it does not of itself make the preference a general assignment, but requires some proceedings in the state court to have it so declared. Hence we have not regarded it as applicable to the question under consideration.

In regard to the intervening petition of A. C. Franks to be made a party defendant, the order should go allowing this petition to be filed, and that he be made a party defendant. What rights he may have as creditor are not now intended to be adjudicated upon, but may be presented by him either by filing his intervening petition as an answer or cross bill, or by amending his pleadings, as he may think proper. The order, for the present, will be that the intervening petition of A. C. Franks, marked, "Filed Jan. 6, 1899," is filed of record, and that he be made a party defendant to the petition filed by the petitioning creditors herein, with leave to plead further, if he so desires, within 20 days. This order should be entered before the order adjudicating Smith a bankrupt.

Unless counsel for the defendant has some other pleadings to present, the proper order should go, declaring that Smith's answer does not present a defense, and that he, upon the petition and answer, be adjudged a bankrupt, and the case referred to the proper referee.