### In re FRAIZER.

### MISSOURI MOLINE PLOW CO. v. SPILMAN.

(District Court, W. D. Missouri, C. D. August 1, 1902.)

1. VOLUNTARY BANKRUPTCY—CONDITIONAL SALE—FAILURE TO RECORD.

The institution of a voluntary proceeding under Bankr. Act 1898 forthwith makes all the bankrupt's creditors adversary parties in a legal proceeding for the appropriation of his property for the payment of his debts, as much as an involuntary proceeding, so that they are within Rev. St. Mo. § 3412, declaring void as against creditors, unless evidenced by a recorded writing, the condition in a sale of chattels that the title shall remain in the seller till payment of the price.

Bishop & Cobbs and W. D. Jones, for petitioners.
Thomas M. Jones, for trustee.

PHILIPS, District Judge. This cause has been certified to the court by John Montgomery, Jr., referee in bankruptcy, at the instance of the Missouri Moline Plow Company, petitioner, for review. The controversy grows out of the following facts, substantially:

Some time prior to the adjudication in bankruptcy against Morris Fraizer, the Missouri Moline Plow Company, under a written agreement with said Fraizer, of date December 14, 1901, sold and delivered to said Fraizer a list of goods, consisting of certain agricultural implements. The said Fraizer, upon the receipt of the goods, or upon monthly balances, at his option, was to execute notes to the said company for the amount to be paid for the goods. The contract contained the following provisions:

"The second party [that is, Fraizer] agrees that the title to and owner-ship of the implements which may be shipped as hereinafter provided shall remain in the party of the first part [the Moline Company]; and their pro-ceeds, in case of sale, shall be the property of the Missouri Moline Plow Company, held subject to their order, until full payment shall have been made for said goods or said notes, and until any judgment rendered therefor or thereon is paid in full. If the purchaser under this contract sells out, fails, or becomes insolvent, or any member of the purchaser's firm fails, sells out, or becomes insolvent, or dies, all accounts and notes for goods bought under this contract, including renewal notes, in whose hands soever said notes shall be, shall then become due and payable, whether the notes be given in payment for the goods or accounts, or collateral security thereto."

At the time of the adjudication in bankruptcy, the bankrupt held certain goods sold and shipped to him under the foregoing agreement, and the same were taken possession of by the trustee in bankruptcy. Said Missouri Moline Plow Company thereafter presented its peti-tion to the referee in bankruptcy for an order on the trustee to turn over and deliver said goods to the petitioner. The contract afore-said was neither acknowledged nor recorded in the county where Morris Fraizer, the vendee, resided, and where the goods were de-livered. On this statement of facts, the referee denied the petition, and the petitioner asks to have this ruling reviewed.

Section 3412 of the Revised Statutes of Missouri, 1899, declares that:

"In all cases where any personal property shall be sold to any person, to be paid for in whole or in part in installments, or shall be leased, rented, hired or delivered to another on condition that the same shall belong to the person purchasing, leasing, renting, hiring or receiving the same whenever the amount paid shall be a certain sum, or the value of such property, the title to the same to remain to the vendor, lessor, renter, hirer or deliverer, of the same, until such sum, or the value of such property, or any part thereof, shall have been paid, such condition, in regard to the title so remaining un-til such payment, shall be void as to all subsequent purchasers in good faith, and creditors, unless such condition shall be evidenced by writing executed, acknowledged and recorded as provided in cases of mortgages of personal property."

The state supreme court, in Collins v. Wilhoit, 108 Mo. 451, 18 S. W. 839, holds that the term "creditors," as employed in the fore-going statute, applies to all creditors of the vendee, whether prior or subsequent. The case at bar is therefore ruled by the decision of the court of appeals of this circuit in Re Pekin Plow Co., 112 Fed. 308, 50 C. C. A. 257, in which it is held that although the term "cred-itor," employed in a correlative statute, means a creditor "armed with legal process" (that is, one who has taken legal steps to enforce his right as a creditor), yet all creditors of an involuntary bankrupt, after adjudication in bankruptcy and the presentation of their claims, become creditors, within the meaning of the statute aforesaid, and the various provisions of the bankrupt act; that a trustee chosen under the bankrupt act of 1898 "becomes the representative of all the cred-itors, and is possessed of their rights to attack fraudulent convey-ances"; and that he becomes vested by operation of law of all the property which prior to the filing of the petition in bankruptcy the insolvent debtor could by any means have transferred, "or which might have been levied upon and sold under judicial process against

him." And therefore, as all the creditors of the bankrupt, by opera-
tion of law, became parties to the judicial proceeding for the seizure
and appropriation of all the apparent property of the bankrupt for
the payment of his creditors, such a conditional sale of property, not
evidenced by an instrument in writing duly acknowledged and re-
corded in pursuance of the state statute, is void as against such
creditors.

Other reasons occur to my mind in support of the ruling of the
referee, but all argument is concluded by the ruling of the court of
appeals in the Pekin Plow Co. Case, supra.

It results that the exceptions to the referee's decision are over-
ruled, and his findings and conclusions are affirmed.

## On Rehearing.

### August 27, 1902.

In the opinion heretofore filed, on exceptions by the intervener,
the Moline Plow Company, overruling the exceptions to the ref-
eree's action denying the claim of the intervener, the court followed
the ruling of the court of appeals of this circuit in Re Pekin Plow
Co., 50 C. C. A. 257, 112 Fed. 308. Petitioner has filed a motion for
rehearing, directing the attention of the court to the fact that the
case ruled by the court of appeals was a proceeding in involuntary
bankruptcy; whereas the case at bar is a voluntary proceeding. The
contention is that the ruling of the court of appeals rested upon the
proposition that a petition in involuntary bankruptcy is an adversary
proceeding taken by the creditor against the bankrupt, and that the
institution of such adversary action places the creditors in the position
of "using the courts of law and their process for the collection of
their debts," within the meaning of the term "creditors," employed in
section 3412, Rev. St. Mo. 1899, quoted in the former opinion herein.
It may be conceded that, as a general rule, courts are not concluded
by a decision beyond the particular facts and principles of law aris-
ing therein. But it must likewise be conceded that, in applying the
ruling of a court in a given case, its reasons assigned, and the un-
derlying principles of law asserted, should guide in carrying them into
another cause,—especially so in construing the same statute in pari
materia. Why should there be any difference in respect of a con-
ditional sale, in effect fraudulent against creditors under the Mis-
souri statute, when the bankrupt is declared to be bankrupt in a vol-
untary or involuntary proceeding? In both instances the bankrupt
estate becomes amenable to the operation of the bankrupt act. The
postulate announced by the court in Mueller v. Nugent, 184 U. S.
14, 22 Sup. Ct. 269, 46 L. Ed. 405, "that the filing of a petition is a
caveat to all the world, and in effect an attachment and injunction,"
in the very necessities of the whole scheme and spirit of the bank-
rupt act, must apply as well to a voluntary as an involuntary pro-
ceeding. The moment the petition is filed the proceeding is in rem.
It, in legal effect, sequesters all of his property interests for the
benefit of all of his creditors, pari passu, as if seized under attach-
ment or a writ of execution. His whole estate passes into custodia

legis. Eo instante every creditor of the bankrupt becomes an adversary party in a legal proceeding for the appropriation of the property of the bankrupt, and stands as a creditor seeking the aid of the court of exclusive jurisdiction. The trustee, representing the creditors, becomes antagonistic to such a creditor as the petitioner, who claims as a vendor of personal property under a conditional sale, not acknowledged and not recorded. So that after filing his petition in bankruptcy the bankrupt cannot dismiss the petition without notice to all of his creditors, with the consequent right on their part to appear and contest. It was of this right, under section 59, subsec. "g," Bankr. Act, that the court, inter alia, in Re Pekin Plow Co., asserted:

"These provisions evince an unquestionable intent on the part of congress to make all creditors of the bankrupt parties to the proceeding, when once instituted. The effect of the institution of such proceeding is to forthwith sequester and appropriate all the property of the bankrupt to the payment of his debts pro rata and equally."

The trustee in bankruptcy acquires the same property rights and interests and privileges, and has the same duties and obligations imposed upon him, under a voluntary as under an involuntary proceeding. He acquires no less and no greater rights and interests than the trustee in an involuntary proceeding, under section 70a, "to all the property which prior to the filing of the petition he [the bankrupt] could by any means have transferred, or which might have been levied upon and sold under judicial process against him." When Judge Adams, speaking for the court of appeals in Re Pekin Plow Co., said, "The trustee chosen under the act of 1898 becomes the representative of all creditors, and is possessed of their right to attack fraudulent conveyances," etc., the language, by its natural force, applies as well to a trustee in a voluntary as in an involuntary proceeding. It is also observable in the foregoing case that the court attached much importance to subdivision "g" of section 59 of the bankrupt act, which declares that "a voluntary or involuntary petition shall not be dismissed by the petitioner or petitioners or for want of prosecution or by consent of parties until after notice to the creditors," and also subdivision "a" of section 67, which provides that "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate." This provision first appears in the bankrupt act of 1898. What was the claim of the creditors of the bankrupt as against the property sold and delivered to the bankrupt by the vendor under an instrument of writing unacknowledged and unrecorded? Admittedly, it was the right to institute legal proceedings, and, under writs, to seize such property and appropriate it to the payment of their debts. As against creditors, both prior and subsequent, who sought the aid of the courts and judicial process, such vendor's claim was void. The moment of the institution of the proceedings in bankruptcy, such creditors, as already stated, by operation of law, became adversary parties; and the clear expression of the act is that the claim of such vendor shall thereafter be no more a lien against the bankrupt's estate than he

would have had against the claims of creditors, had they, prior to the institution of the bankruptcy proceedings, invoked the process of court for the collection of their debts. In other words, the intention of congress was to as effectually cut off such lien in favor of creditors by the adjudication of bankruptcy as if the creditors had, prior to the recording of such contract of sale, sought the aid of a court for the collection of their debts. And this is emphasized by the language of Judge Adams in commenting upon this provision of the bankrupt act, in declaring that "it means that any liens which would not have been valid if other creditors had a right, before bankruptcy, to avoid the same, either for want of record or otherwise, shall not constitute a lien against the estate in bankruptcy." No matter what the form of the legal proceeding taken by the creditor, if it be instituted prior to the assertion of the lien by the vendor, the prior right of the creditor has attached. The general language of the court in Re Pekin Plow Co. that "the effect of the institution of such proceeding is to forthwith sequester and appropriate all the property of the bankrupt to the payment of his debts, pro rata and equally," was not limited to the instance of an involuntary proceeding, as shown by the context. The learned judge had just quoted subdivision "g" of section 59, that "a voluntary or involuntary petition shall not be dismissed by the petitioner or petitioners either for want of prosecution or by consent of the parties until after notice to the creditor," for the purpose of showing that after filing a voluntary or involuntary proceeding all the creditors acquired such rights and interests therein that it was neither in the power of the bankrupt nor the petitioning creditors to dismiss the cause without notice to and hearing by all the creditors. There is nothing expressed in the whole bankrupt act giving color to the idea that a creditor or the trustee under an involuntary proceeding should have any greater rights than under a voluntary proceeding. Any such discrimination would run counter to the whole scheme and policy of the bankrupt act, which is to secure equality among all creditors of the bankrupt estate. It would be remarkable that an insolvent debtor, by anticipating a movement on the part of his creditors to throw him into bankruptcy, could file a voluntary proceeding, and by his act bring about such inequality of right between the creditors of a voluntary and an involuntary bankrupt.

The logic of the ruling of the court of appeals in Re Pekin Plow Co., in my judgment, sustains the conclusion of the referee that it should apply to the instance of a voluntary as well as an involuntary bankrupt. Therefore the motion for a rehearing is denied.