WALTER W. HACKNEY, TRUSTEE, V. RAYMOND BROTHERS CLARKE COMPANY.*

FILED APRIL 22, 1903. No. 12,644.

1. **Error: REVIEW.** A much stronger case is necessary to warrant this court in interfering with a second verdict and judgment on the merits by reason of alleged error in setting aside a prior verdict and granting a new trial, than where a motion for a new trial has been denied.

2. **Instruction: NOTICE OF INSOLVENCY.** An instruction, that notice of facts sufficient to lead a prudent man to the conclusion that a debtor "could not meet his obligations as they matured in the ordinary course of business" is notice of the insolvency of such debtor, within the meaning of the bankruptcy act, is erroneous.

3. **Preferred Creditor: RECOVERY OF ASSETS.** The trustee in bankruptcy may recover money paid by the bankrupt as a preference, only when the person receiving it had reasonable ground to believe that a preference was intended.

4. ———: **NOTICE.** If the creditor has reasonable ground to believe that the debtor is insolvent, and the obvious effect of receipt of the money under those circumstances is to give him an advantage over other creditors, he is chargeable with notice of intent to prefer.

5. **Bankruptcy Act: INSOLVENCY: QUESTION OF FACT.** Whether a creditor had reasonable cause to believe his debtor insolvent within the purview of section 60 of the bankruptcy act is a question of fact.

6. **Notice.** In determining this question, it is not necessary to find that the creditor actually knew or believed that the debtor was insolvent. He is chargeable with notice of such facts as a reasonable inquiry, in view of the circumstances with respect to the debtor's condition which were brought home to him, might fairly be expected to disclose.

* Rehearing allowed. See opinion, p. 633, *post.*

7. ———: SUFFICIENCY. But a mere knowledge that the debtor has other liabilities, or of circumstances which could operate no further than to create a suspicion of possible insolvency, will not necessarily suffice.

8. Preference: COLORABLE DEVICE. A creditor will not be permitted to obtain a preference indirectly by transfer of his account, procuring a third party to loan money to the debtor for payment of such creditor, or other colorable device or transaction intended to evade the provisions of the bankruptcy act.

9. Transfer of Account: GOOD FAITH. But an absolute transfer of an account against the insolvent debtor, in good faith, to one who afterwards buys the latter's stock of goods and obtains credit for such account on the purchase price, without any agreement or understanding that such use was to be made thereof, or that the purchaser of the account was to be protected by the creditor in any way, does not constitute a preference of the creditor to the extent of the money he received on sale of his claim.

10. Remedy. In such case the remedy is against the purchaser of the stock, who received credit on the purchase price for the account so transferred, in case he had reasonable ground to believe that a preference was intended.

11. Evidence. A schedule of liabilities filed by the bankrupt in bankruptcy proceedings, is not competent evidence on an issue between the trustee and third persons as to the financial condition of the bankrupt three months before such proceedings were instituted.

12. Good Faith: INTENTION: EVIDENCE. While a person's intention is to be determined primarily from his acts, where such acts are ambiguous and good faith is in issue, he may testify what his intention was.

13. Cross-examination of Hostile Witness: DISCRETION OF TRIAL COURT. How far, if at all, a party shall be permitted to cross-examine, or put leading questions to his own witnesses, where they appear to be hostile or unwilling, is in the discretion of the trial court, and its rulings in such matters will not be disturbed except for manifest abuse of discretion.

14. Questions Not Raised in Briefs. This court is not bound to examine questions not so raised in the briefs as to state specifically what is complained of, the reason and basis of the complaint, and the exact portions of the record material thereto.

ERROR to the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. *Affirmed.*

*John S. Bishop, Robert S. Mockett* and *Orpheus B. Polk,* for plaintiff in error.

44

*Henry H. Wilson* and *Elmer W. Brown, contra.*

POUND, C.

This is an action by the plaintiff, as trustee in bankruptcy of one Erlenborn, to recover an alleged preference claimed to have been received by the defendant as a creditor of said Erlenborn. The transaction by reason whereof a preference is alleged to have resulted was, in substance, this: Erlenborn was a retail merchant, and was indebted to several wholesalers, among others, to the defendant. One Kettering bought out Erlenborn, and, as part of the purchase price of the latter's stock, put in the account of the defendant against Erlenborn, which he had purchased at a discount of 25 per cent. The principal issues were whether Erlenborn was insolvent at the time of this transaction; whether Kettering and the defendant had reasonable ground to believe him insolvent; and whether the transfer of the account from the defendant to Kettering was an absolute transfer, made in good faith, without any understanding that Kettering was to be protected, and without any agreement or understanding that the account was to be used as part of the purchase price in a contemplated purchase of Erlenborn's stock, or was merely a colorable device for the purpose of evading the bankruptcy law and enabling the defendant to obtain a preference. The sale took place three months prior to the institution of bankruptcy proceedings, and consequently would be within the terms of the act in case we should hold the transaction amounted to a preference. There were two trials in the court below. At the first trial a verdict was rendered for the plaintiff. A new trial was granted, which resulted in a verdict and judgment for the defendant. The plaintiff has come to this court on error, and complains of the order of the district court granting a new trial after the first verdict, and of its rulings and judgment at the second trial.

A much stronger case is necessary to warrant this court

in interfering with a second verdict and judgment on the merits by reason of alleged error in setting aside a prior verdict and granting a new trial, than where a motion for a new trial has been denied. *Weber v. Kirkendall,* 44 Neb. 766. The new trial appears to have been granted because the district court was of opinion that one of its instructions at the first trial was erroneous. We think this conclusion was correct, and that the error in the instruction was sufficient to justify its action. Among other things, the jury were instructed that notice of facts sufficient to lead a prudent man to the conclusion that a debtor "could not meet his obligations as they matured in the ordinary course of business" was notice of the insolvency of such debtor within the meaning of the bankruptcy act. This was clearly erroneous. Under a former statute insolvency was so defined; but the present act gives a materially different meaning to that term. In section 1 it is provided that "a person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property  *  *  * shall not, at a fair valuation, be sufficient in amount to pay his debts." Manifestly, a person may not be able to meet current obligations and yet his property at a fair valuation may be sufficient to pay his debts. So long as the insolvency of Erlenborn at the time of the transfer was in issue, we can not say this was not prejudicial error. Notice that a debtor has not paid a claim at maturity is not necessarily and conclusively notice of insolvency under the present law. *In re Eggert,* 102 Fed. 735, 43 C. C. A. 1. As one of the facts relied on was that Erlenborn was not meeting his account with the defendant promptly, this point became very material.

The principal controversy with respect to the second trial turns upon the instructions of the court. The plaintiff contended that the necessary effect of the sale of defendant's claim against Erlenborn to Kettering was to prefer the defendant, while the defendant contended that it had a right to sell its claim to whom it pleased, the same as any other property, so long as it made an absolute trans-

fer without any intent to evade the bankruptcy law, and without any secret understanding or agreement which would give it such effect. The court took the latter view, and instructed the jury, in substance, that it was a question of fact whether the transfer of the account was absolute and in good faith, or a mere colorable device for the purpose of securing a preference indirectly. Whether or not the defendant had reasonable ground to believe Erlenborn insolvent, and to believe that the purchase of the account by Kettering would operate as a preference, becomes an important question in connection with the issue as to the nature and effect of the transaction. The trustee in bankruptcy may recover money paid by the bankrupt as a preference only when the person receiving it had reasonable ground to believe that a preference was intended. Such is the language of the statute, and the courts so hold. *Pirie v. Chicago Title & Trust Co.*, 182 U. S. 438. If the creditor has reasonable ground to believe that the debtor is insolvent, and the obvious effect of receipt of the money under those circumstances is to give him an advantage over other creditors, he is chargeable with notice of intention to prefer. *Pirie v. Chicago Title & Trust Co.*, *supra.* A person must be held to intend the obvious results of what he does. Notice that such results will follow is notice of the intention with which the act is done. *Johnson v. Wald,* 93 Fed. 640; *In re Fort Wayne Electric Corporation,* 99 Fed. 400. In *Johnson v. Wald* the court say:

"Where an insolvent debtor transfers to one of his creditors, in payment of his debt, personal property sufficient in value to satisfy the debt in full, his 'intent to prefer such creditor over his other creditors,' necessary to make such transfer an act of bankruptcy, will be presumed; the preference being the natural result of the transfer." Hence, in such cases, the crucial point is reasonable cause to believe the debtor insolvent. Whether a creditor had reasonable cause to believe his debtor insolvent within the purview of section 60 of the bankruptcy act, is a question of fact. *In re Eggert,* 102 Fed. 735, 43

C. C. A. 1. In determining this question, it is not necessary to find that the creditor actually knew or believed that the debtor was insolvent. He is chargeable with notice of such facts as a reasonable inquiry, in view of the circumstances with respect to the debtor's condition which were brought home to him, might fairly be expected to disclose. *In re Eggert, supra.* But a mere knowledege that the debtor has other liabilities, or of circumstances which could operate no further than to create a suspicion of possible insolvency, is not always sufficient. In the *Eggert* case the circuit court of appeals say:

"The resultant of all these decisions we take to be this: That the creditor is not to be charged with knowledge of his debtor's financial condition from mere nonpayment of his debt, or from circumstances which give rise to mere suspicion in his mind of possible insolvency; that it is not essential that the creditor shall have actual knowledge of, or belief in, his debtor's insolvency, but that he should have reasonable cause to believe his debtor to be insolvent; that if facts and circumstances with respect to the debtor's financial condition are brought home to him, such as would put an ordinarily prudent man upon inquiry, the creditor is chargeable with knowledge of the facts which such inquiry should reasonably be expected to disclose.  *  *  * The only fact brought home to the creditor, and which it is claimed should have aroused inquiry, is that he was somewhat behind in the prompt payment of his obligations. We can not say, as a conclusion of law, that knowledge of that fact standing alone was sufficient to put the creditor upon inquiry. Indeed, it may be said that a majority of merchants absolutely solvent, in the sense in which the term is employed in the bankruptcy act, are not at all times able to promptly meet their obligations as they mature."

The same position is taken in *Lyon v. Clark,* 129 Mich. 381, 88 N. W. 1046. Under these authorities, with which we fully agree, the court was right in refusing to direct a verdict for the plaintiff. The mere fact that defendant's

account was overdue, and that its collector had been seeking to obtain payment, was not sufficient to charge the defendant with notice of insolvency on the part of Erlenborn, or an intention on his part to make a preference.

With respect to the nature of the transactions between defendant and Kettering on the one hand, and between Kettering and Erlenborn on the other hand, we think the question was peculiarly one for the jury. A creditor will not be permitted to obtain a preference indirectly by transfer of his account, procuring a third party to loan money to the debtor for payment of such creditor, or other colorable device or transaction intended to evade the provisions of the bankruptcy act. As was said in the case of *In re Beerman,* 112 Fed. 663, 666. "If transactions of this sort are to be permitted, then, instead of a creditor taking a mortgage himself, when a debtor is in failing circumstances he will get some one else to advance the money, agreeing that the person advancing the money shall suffer no loss, and thereby obtain by indirection a preference which he would be unable to get if he had acted directly with the debtor."

But an absolute transfer of an account against the insolvent debtor, in good faith, to one who afterwards buys the latter's stock of goods and obtains credit for such account on the purchase price without any agreement or understanding that such use was to be made thereof, or that the purchaser of the account was to be protected by the creditor in any way does not constitute a preference of the creditor to the extent of the money he received on sale of his claim. To construe the bankruptcy act as preventing creditors from disposing of their claims absolutely in good faith, as they undoubtedly may do where the debtor is solvent, would, as the court well expressed it in *In re Eggert, supra,* "put at hazard many business transactions and make the act oppressive." In the somewhat similar case of *North v. Taylor,* 61 App. Div. (N. Y.) 253, 70 N. Y. Supp. 339, a husband gave his own note to his wife for a note which she held against the bankrupt, and then turned

in the note to the bankrupt upon the purchase price of the latter's stock of goods. The evidence did not show that the husband acted as the wife's agent, or that she was aware of the insolvency of her debtor. It did not appear that she received the proceeds of the transfer to her husband. The court held that the trustee could not recover the amount of the note from the wife, on the ground that she had received a preference. In *Lyon v. Clark, supra,* another case involving a transaction not unlike that in the case at bar, the court held that the question was one of good faith, and that such a transaction could not be pronounced a preference as a matter of law. We think this must be so clearly. The remedy in case the transaction was *bona fide* is against the purchaser of the stock, who received credit on the purchase price for the account so transferred. He, not his assignor, was preferred. In case he had reasonable ground to believe that a preference was intended, the trustee has a cause of action against him. It can not be said that his assignor was preferred unless the assignment was entered into to evade the bankruptcy law, with some secret understanding or agreement whereby the assignor was to be protected, or was to be a mere figurehead, while the real and substantial transaction was between the debtor and the assignor. We are of opinion that the instructions of the court are fully in accordance with the views above expressed, and that its rulings in giving and refusing instructions were free from error.

A number of errors are assigned upon rulings on evidence. A schedule of liabilities filed by Erlenborn in the bankruptcy proceedings was offered on behalf of the plaintiff, and excluded by the court. This ruling was right. It is not perceived how the schedule could be competent evidence on an issue between the trustee and a third person as to the financial condition of the bankrupt three months before. Complaint is made, also, that one of the officers of the defendant was permitted to testify as to his intention in making the transfer of the account to Kettering. While a person's intention is to be determined pri-

marily from his acts, where such acts are ambiguous and good faith is in issue, he may testify what his intention was. 1 Greenleaf, Evidence, sec. 462; *Sweet v. Tuttle,* 14 N. Y. 465; *Seymour v. Wilson,* 14 N. Y. 567; *Starin v. Kelly,* 88 N. Y. 418. In the case at bar, the evidence was conflicting upon the issue whether the assignment was absolute and in good faith, or was a mere device to evade the bankruptcy act. The act of assignment, taken by itself, is consistent with either view. Hence it was proper to permit the parties thereto to testify to their intention, and it would have been error to exclude such testimony. *Seymour v. Wilson, supra.* The plaintiff produced Kettering as a witness on his own behalf, and subjected him to a severe examination, which, in substance, was a cross-examination. The trial court ruled somewhat strictly at many points in the course of this examination, and complaint is made as to a large number of these rulings. How far, if at all, a party shall be permitted to cross-examine or put leading questions to his own witnesses, where they appear to be hostile or unwilling, is in the discretion of the trial court, and its rulings in such matters will not be disturbed except for manifest abuse of discretion. *St. Joseph & G. I. R. Co. v. Hedge,* 44 Neb. 448; *Welsh v. State,* 60 Neb. 101.

Many other assignments of error are referred to in the brief, but they are not argued in such manner as to make it necessary for us to take them up in detail. This court is not bound to examine questions not so raised in the briefs as to state specifically what is complained of, the reason and basis of the complaint, and the exact portions of the record material thereto. Such, we think, is the fair import of the numerous decisions of this court to the effect that it will not consider errors not argued in the briefs. We come to the conclusion that these several assignments of error need not be gone over in detail, the more readily, because, from examination of the record, we are of opinion that the instructions of the court and its rulings on evidence were more than usually careful and

circumspect, and that the plaintiff had a fair trial in every way. The evidence is sufficient to sustain the verdict, and the record discloses no prejudicial error.

We therefore recommend that the judgment be affirmed.

BARNES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing in *Hackney, Trustee, v. Hargreaves Bros.*, 3 Neb. (Unof.) 676, and in *Hackney, Trustee, v. Raymond Bros. Clarke Co., ante*, p. 624, was filed May 5, 1904. *Judgment of reversal in Hackney, Trustee, v. Hargreaves Bros. adhered to; judgment of affirmance in Hackney, Trustee, v. Raymond Bros. Clarke Co. vacated. Both cases remanded:*

1. **Bankruptcy Act: UNLAWFUL PREFERENCE.** A creditor of a bankrupt can not escape the consequences of the bankruptcy act regarding unlawful preferences by assigning his account to a purchaser of the property of the bankrupt under an arrangement whereby such purchaser offers to assume the liability, and satisfy such account contingent upon the purchase of the bankrupt's property, and where in the sale of such bankrupt's property, as a part of the consideration, such purchaser agrees to and assumes such liability, and reserves from the purchase price an amount sufficient to satisfy the same.

2. **Legal Effect of Conditional Transfer of Account.** In such a case the legal effect of the transaction is to appropriate out of the assets of the bankrupt the amount required and used in the satisfaction of such claim by the purchaser assuming the liability, and other essential elements not being lacking, an unlawful preference in favor of such creditor results therefrom.

3. **Schedule Admissible in Evidence.** In a contest between a trustee in bankruptcy and one sought to be charged as a creditor having received an unlawful preference, the schedule of liabilities filed by the bankrupt in the bankruptcy proceedings is admissible in evidence on the issue of insolvency as tending to prove the insolvency charged.

4. *Hackney v. Hargreaves Brothers*, 3 Neb. (Unof.) 676, adhered to.

HOLCOMB, C. J.

What is here said regarding the two cases as above entitled is to be considered in connection with the two opinions heretofore announced: *Hackney v. Hargreaves Bros.*, 3 Neb. (Unof.) 676, and *Hackney v. Raymond Bros. Clarke Co., ante,* p. 624. The facts as disclosed by the two records in all material respects are essentially the same, so much so that the conclusion as to the ultimate fact in controversy, properly deducible in one case, must necessarily be the same in the other, and the principles of law applicable are identical in each case. We have therefore deemed it proper and a lessening of labor to consider both cases together. A thorough consideration of the two records convinces us that the conclusion reached and announced in the opinion heretofore rendered in the first-mentioned case is correct and should be adhered to, and that the second opinion, in so far as it conflicts with the first, must give way to that extent. Counsel in both cases have very ingeniously, and with more or less plausibility, argued that the controlling proposition and question for determination is with respect to the right of a creditor in good faith to sell and dispose of an account or other obligation held against a bankrupt debtor, regardless of the question of insolvency or notice thereof, and that in such a transaction none of the provisions of the bankruptcy law are infringed upon. The soundness of the proposition is readily conceded, but its applicability to the facts as disclosed by the records in the two cases at bar is seriously questioned. The arguments thus advanced to sustain the transactions under investigation are beside the mark. While an attempt is made to clothe the transactions out of which the controversies arise in the garb of a legitimate contract of bargain and sale of an account wholly independent of and free from any of the provisions of the bankruptcy law, yet when they are stripped of the covering thus sought to be thrown around them, and exposed to view

in their real character, the conclusion is inevitable that the transactions resulted in a preference in favor of the defendants, other essential elements not being lacking, and that these creditors of the bankrupt received more of his estate than other creditors who were under that law entitled to share equally in the distribution of the assets of the bankrupt. It is conceded that if it be determined that the transactions in question are not such as to bring them within the rule invoked which permits any creditor to make a *bona fide* sale of his claim or account against a bankrupt as he sees fit, then the transactions in the case at bar result in a preference which is inhibited by the law of bankruptcy, assuming that the creditors had knowledge or reasonable cause to know the financial condition of the bankrupt. It is indisputably established by the records that the defendants Hargreaves Brothers and Raymond Brothers Clarke Company are wholesale merchants in the city of Lincoln, dealing in grocery supplies; that the bankrupt, Erlenborn, was conducting a retail grocery store in the same city, and was indebted to the two firms mentioned in a considerable sum of money to each on account, at the time of the transactions forming the basis of the present action. One Kettering began negotiations to purchase the grocery stock and good will of Erlenborn. During the negotiations, knowledge of the indebtedness owing to the two wholesale firms was conveyed to Kettering, which caused him to confer with both defendants about their respective accounts against Erlenborn before he had completed the purchase of the latter's stock of groceries. Kettering then entered into negotiations with both firms, with a view to his assuming these obligations and agreeing to satisfy the indebtedness owing by Erlenborn. The negotiations resulted in an agreement whereby Kettering was to become the debtor in place of Erlenborn, and satisfy the two accounts by the payment of 75 cents on the dollar, a part of which was to be paid in cash, and the remainder by accepting his personal obligations payable in stated instalments. These negotiations with the defendants were

qualified and contingent upon his consummation of the negotiations then under way with Erlenborn the bankrupt. Hargreaves Brothers frankly admit that the assignment of their account to Kettering was with the understanding that it was to be used in part payment by Kettering in his purchase of the Erlenborn stock of groceries.

It is equally patent from the record in the other case that Kettering offered to pay 75 cents on the dollar for the account held by Raymond Bros. Clarke Company against Erlenborn, provided he succeeded in buying the stock, and that his offer was accepted with this understanding. It is vain to talk about Kettering buying these two accounts unqualifiedly and unconditionally, as such accounts might, in the ordinary course of business, be sold and transferred from one person to another. The fundamental basis of the negotiations between Kettering and the defendants was the successful conclusion of the contemplated purchase of the grocery stock of the bankrupt. The antecedent agreement in each case was made to depend on the consummation of the negotiations then in progress with Erlenborn. Kettering was not buying stale demands or bad debts as such, but was desiring to purchase a stock of groceries, the owner of which was indebted to these defendants, and as a part of the transaction, entered into the negotiations with the defendants with a view to the satisfaction of their demands against the seller in the event a purchase was effectuated. This was obviously known to all the parties to the transaction, and herein lies the determining factor which takes the transaction out of the class which involves only a simple business proposition of buying and selling a book account against a third party, or other similar subjects of bargain and sale. But what followed? After Kettering and the defendants had agreed upon the terms by which he could satisfy the accounts of the defendant against Erlenborn, and which agreements were contingent upon his purchase of the Erlenborn stock of groceries, he reaches an agreement with Erlenborn concerning the terms of the sale

of the latter's stock, and, as a part of the consideration for the purchase, agrees with the seller that he will satisfy the two accounts owing by Erlenborn to the defendants, and reserve from the agreed purchase price for the stock the total amount of the face of both accounts. The terms of the sale between Erlenborn and Kettering were agreed upon on Saturday. On Sunday an invoice of the goods sold was taken—the city sales agents of the two defendants assisting in the invoice—and thereafter the key to the store was turned over, and possession given to Kettering and his agent. On Monday morning, papers evidencing the executed contract of sale were made and exchanged between Kettering and Erlenborn, and thereafter Kettering went to the two defendants herein, arranged for the satisfaction of the two accounts in controversy, in pursuance of the prior arrangements, by paying a part in cash and giving his personal obligations for the remainder, and he was given a formal assignment of the accounts. These transactions are denominated unqualified and *bona fide* sales of the accounts which Kettering thus satisfied wholly disconnected and unrelated to any of the provisions of the bankruptcy law. If the provisions of the bankruptcy law may, by an arrangement so transparent as those under consideration, be evaded, then, indeed, has the law failed of its purpose as if it were a sieve designed to hold water. The labeling of the transaction a simple sale of an account does not make it so. A court will not hesitate to throw off the covering and ascertain the true nature of the transaction under inquiry. If the transactions are in truth and substance plans whereby creditors secure a preference, and which result in violations of the provisions of the bankruptcy act, a court ought not to hestitate so to characterize them. The act was designed to bring about equality between creditors of a bankrupt, and to prevent one creditor by any method, either direct or indirect, from securing an unlawful preference to the exclusion of others. The act was designed for the protection, more than any others, of the very class to which the defendants belong.

In the final analysis of the transactions under considera-
tion, the conclusion is inevitable that the estate of the
bankrupt was depleted to the extent of the amount re-
quired to satisfy the claims of the defendants, and that
the debtor Erlenborn surrendered his property to that ex-
tent for the very purpose of, and with the express agree-
ment for, the payment of these claims then owing to the
defendants.    To constitute a preferential transfer, it is
immaterial to whom the transfer is made, if it be made for
the purpose of paying the claims of one creditor in pref-
erence to those of others.    5 Cyc. 294, par. *b; Goldman
v. Smith,* 93 Fed. 182.    The observation, therefore, in the
first opinion to the effect that the defendants were parties
to the transfer of the stock, and that the arrangement by
which they took 75 per cent. of their claims against Erlen-
born was a part of the transaction, and the assignments
were made with the understanding that the accounts were
to be used in payment of the goods, is pertinent and cor-
rectly stated.    Looking to the substance rather than the
form, it at once becomes obvious that the logical and legal
effect of the transactions as a whole was to appropriate
out of the proceeds of the sale of the bankrupt's estate a
sufficient amount to satisfy the claims of the two creditors
who are defendants in these actions.    The true nature of
the transactions is not open to question, and, if the de-
fendants knew that Erlenborn was insolvent, or had rea-
sonable grounds to believe that he was, they must have
known that a preference would result, and must be held
to have so understood and intended it.    Intent, in one
sense of the word and in the sense in which the witness
Raymond was permitted to testify as to his intent in
transferring the account, is wholly outside the case as
made by the record.    The bankruptcy act makes the result
obtained by a creditor, and not the specific intent of the
debtor, the essential fact.    An intent to prefer is not re-
quired to be specifically proved, but is conclusively pre-
sumed from the effect of the transaction in giving one
creditor a greater percentage of his debt than any other

creditor of like class. If a preference would inevitably result, then it is conclusively presumed that a preference was intended. *Wilson v. Nelson,* 183 U. S. 191; Brandenburg, Bankruptcy (2d ed.), 562, and authorities cited. Where a creditor has reasonable ground to believe that the debtor is insolvent, and the obvious effect of the receipt of money in satisfaction of the obligation under those circumstances is to give him an advantage over other creditors, he is chargeable with notice of intention to prefer. *Pirie v. Chicago Title & Trust Co.,* 182 U. S. 438. We are, for the reasons given, of the opinion, as was held in the first opinion in *Hackney v. Hargreaves Bros.,* 3 Neb. (Unof.) 676, that the trial court erred in submitting to the jury the question of whether the transactions between Kettering and Erlenborn and the defendants were or were not *bona fide* sales of accounts, or whether they were entered into with a view to securing a preference in violation of the bankruptcy law.

One other question seems to require consideration. This refers to the ruling of the trial court in excluding as evidence the schedule of liabilities filed by the bankrupt in bankruptcy proceedings. In the former opinion in the Raymond case this ruling was approved. The authorities hold such evidence admissible, not as conclusive of the alleged insolvency, but as tending to prove that issue. The schedule was a part of the pleadings in the bankruptcy proceedings, and defendants in these actions are sought to be charged by the trustee as having been given an unlawful preference as creditors of the bankrupt. All the creditors of the bankrupt were parties to the bankruptcy proceeding. *In re Pekin Plow Co.,* 112 Fed., 308, 50 C. C. A. 257; *In re Frasier,* 117 Fed. 746; *In re Beerman,* 112 Fed. 662; *Logan v. Nebraska Moline Plow Co.,* 3 Neb. (Unof.) 516.

"The books of a bankrupt are competent evidence on the question of his insolvency within four months of the date of the filing of the petition, and while not conclusive are ordinarily important evidence entitled to much weight;

the schedules and inventory and appraisement are also evidence on the same question." *In re Docker-Foster Co.,* 123 Fed. 190.

See, also, *Martin-Brown Co. v. Henderson,* 9 Tex. Civ. App. 130, 28 S.W. 695; *Ball v. Bowe,* 49 Wis. 495; *Von Sachs v. Kretz,* 72 N. Y. 548; Lowell, Bankruptcy, sec. 98. The adjudication of bankruptcy is manifestly admissible in evidence for the purpose of establishing the fact of insolvency, and it can scarcely be doubted that the schedule of liabilities, as against the parties to the controversy, and upon which the adjudication is based, are likewise admissible, not only as evidence of the same class or character as the books of the bankrupt but also for the purpose of showing the grounds upon which the judgment of bankruptcy was rendered. The defendants in the actions are not third parties in the sense that they are in no wise connected with the bankruptcy proceedings, because, for the purpose of these controversies, and in determining their liability, they are sought to be charged as creditors of the bankrupt having received unlawful preferences, and for such purposes were necessarily parties to the bankruptcy proceedings. The schedule of liabilities of the bankrupt should have been, on the issue of insolvency, admitted in evidence.

It follows from what has been said that the opinion and judgment announced in the first above mentioned case should be adhered to, and that the judgment in the case of *Hackney, Trustee, v. Raymond Bros. Clarke Co.,* heretofore entered, should be vacated, and a judgment rendered reversing the judgment of the trial court, and both causes remanded for further proceedings not inconsistent with the views herein expressed.

JUDGMENT ACCORDINGLY.