This action was brought by the plaintiff, as trustee in bankruptcy of J. W. Taylor, to recover of the defendant the sum of $901, alleged to have been paid to the defendant, as a perferred [preferred] creditor, by C. H. Spencer, assignee, under a general assignment executed by Taylor (213) for the benefit of his creditors. The defendant in her answer denied her liability to the plaintiff and tendered separate issues as to the bankruptcy, the appointment of the plaintiff as trustee, the assignment of his property by Taylor within four months before the filing of the petition in bankruptcy, the payment to her by Taylor, through his assignee, of $901 within the said time, the knowledge of defendant or reasonable cause to believe that it was intended thereby to give her a preference, and the amount plaintiff is entitled to recover. The court refused to submit these issues, but substituted for them the following issue: "Is the defendant indebted to the plaintiff? If so, in what sum?" Defendant excepted.
Plaintiff introduced in evidence duly certified copies of the following papers filed in the bankruptcy proceedings: Subpoena, order to show cause, order of reference, order of adjudication, notice to trustee of his appointment, bond of trustee and order of referee approving the bond of trustee. Defendant objected to the introduction of these papers, not, however, upon the ground that they were not properly authenticated, but because they were not sufficient in law to prove the appointment of the plaintiff as trustee without a copy of that part of the record showing the appointment of the plaintiff as trustee by the creditors, with the approval of the referee in bankruptcy. The objection was overruled, and the defendant excepted.
The evidence tended to show that at the time J. W. Taylor made the assignment for the benefit of his creditors his indebtedness amounted to $12,000 and his assets to $1,855. The defendant was preferred in the assignment to the amount of her claim, which was $901, and it and the other preferred debts, amounting to $559.79, were paid to the creditors by the assignee, and the balance, $394.21, paid to the trustee in bankruptcy. It was admitted that, at the time J. W. Taylor executed the assignment, he was insolvent. C. H. Spencer, the assignee, testified that *Page 168 
he paid the $901 to the defendant through J. W. Taylor, who delivered the checks to her. One of the checks was signed by him as assignee. The defendant asked the trustee to send her a check for the amount due her, and after seeing her he did so. While he could not say that she (214) had seen the assignment or knew of it, she received the money from him as due to her under the assignment. He further testified as follows: "The amount of assets collected was $1,855, and I paid the $901 out of this. The indebtedness was by note. I did not tell her of the assignment and its provisions; she came to me and said she had been informed that she was a preferred creditor, and asked me to pay her over the money. She told me she was protected, and I said it was so. She took from me the money with that understanding. She knew little or nothing about business."
The court charged the jury that, "If they found all the facts to be as testified, their answer to the issue would be Yes, in the sum of $850, with interest from 28 August, 1909." Defendant excepted. The jury rendered a verdict for the amount stated in the instruction. Defendant's motion for a new trial having been overruled and judgment entered upon the verdict, she appealed to this Court.
The first exception of the defendant, that there was not sufficient evidence of the appointment and qualification of the plaintiff as trustee, cannot be sustained. Under the Bankrupt Act, the trustee qualifies by giving his bond and having the same approved by the referee. It is the duty of the referee, immediately upon the appointment and approval of the trustee, to notify him of his appointment, and the trustee thereupon is required to give notice of his acceptance or rejection of the trust. If he accepts the trust, he must file an official bond, as prescribed by the act, and this must be approved by the court or referee. Bankruptcy Act, sec. 50b; General Orders in Bankruptcy, No. 16; Loveland on Bankruptcy, sec. 142, pp. 852 and 1149. The act further provides that "a certified copy of the order approving the bond of a trustee shall constitute conclusive evidence of the vesting in him of the title to the property of the bankrupt, and if recorded shall impart the same notice that a deed from the bankrupt to the (215) trustee, if recorded, would have imparted had not bankruptcy proceedings intervened." 2 Remington on Bankruptcy, p. 1766. If the other records introduced in evidence were not sufficient to prove the official character of the plaintiff and to establish his right to sue for and recover the property of the bankrupt, the provision to which we *Page 169 
have just referred fully answers this objection of the defendant, as the plaintiff introduced a certified copy of the bond and the order of approval.
The issue submitted by the court to the jury enabled the defendant to present fully her side of the case and required the jury to answer affirmatively every question embraced in the issues tendered by the defendant before they could render a verdict against her. If one issue will fulfill the purpose of affording to each party a fair opportunity of developing his case, it is much better to submit the case to the jury in that way than to multiply issues which may tend to confusion. Why require the jury to answer many issues, when the answer to one will do, if that one presents fully all matters in controversy? We do not think the defendant was prejudiced in the least by the ruling of the court as to the issues. If the defendant did not go upon the stand and testify herself and offer other witnesses in her own behalf, and thus avail herself of the fair opportunity she had of making good her defense, it was her own fault, and she can not be heard now to say that she did not do so because the issues tendered by her were not accepted. Deaver v. Deaver, 137 N.C. 246; In re Herring'sWill, 152 N.C. 258. We repeat what was said in Deaver's case, supra; "It is not material in what form issues are submitted to the jury, provided they are germane to the subject of the controversy and each party has a fair opportunity to present his version of the facts and his view of the law, so that the case, as to all parties, can be tried on the merits."
The last exception presents the real question in the case. Was the evidence offered sufficient to show a preference voidable under the bankrupt law? To which we must give an affirmative answer. A person is deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment (216) to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Bankrupt Act, sec. 60a; Brandenburg on Bankruptcy (3 Ed.), secs. 946 and 947. In the case of a transfer, the four months do not expire until that period has elapsed after the registration of the instrument, if required to be recorded. In the case of a preference, if the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person. Bankrupt Act, sec. 60b; Brandenburg, sec. 961. *Page 170 
It appears in this ease, without any serious controversy as to the facts, that while J. W. Taylor was insolvent he made a transfer, or assignment, which is the same thing, of all his property for the benefit of his creditors, with a preference in favor of the defendant to the full amount of his indebtedness to her, and after paying the preferred debts, the residue was not sufficient to pay the other creditors. The result, therefore, was that the defendant was given a greater percentage of her claim than some of the other creditors in the same class with her, and this transfer was made and registered within four months before the filing of the petition and the adjudication of bankruptcy. It follows from these undisputed facts that if the defendant had reasonable cause to believe that result was intended, the preferential payment she received was void under the bankrupt law, and she is liable to the plaintiff, as trustee in bankruptcy, for the amount thereof. It is not necessary, in order to invalidate the preference, that there should have been any moral or actual fraud. It is simply a constructive fraud, arising by law upon the existence of certain facts and forbidden by it. There is nothing dishonest or illegal in a creditor's obtaining payment of a debt due him from a failing or embarrassed debtor, nor in his attempting, by proper and ordinary effort, to secure an honest debt; but such an act may afterwards (217) become constructively fraudulent and illegal, by reason of the filing of a petition and an adjudication in bankruptcy. It is voidable by the trustee of the bankrupt's estate because the law says it shall be so, regardless of the moral quality of the act or intent, or the motive of the debtor, however honest it may have been. The law considers only the ultimate effect of such act as being inconsistent with the very purpose and policy of the Bankrupt Act, which is the equal and equitable distribution of the bankrupt's estate among his creditors, subject only to the preferences or priorities therein allowed. Brandenburg, secs. 962, 966. "The acts mentioned in this section are not such as were forbidden by the common law, or generally by the statutes of the States; nor are they acts which in their nature are immoral or dishonest. In order to carry out the spirit of the bankrupt system — an equal division of the bankrupt's property among his creditors — Congress had adopted a conventional rule to determine the validity of these preferences. It has prescribed a limit of four months. Any (forbidden) transfer made within that time is fraudulent and voidable. It is not so because such preferences are morally wrong, but because the act says they are." Bean v. Brookmire, Fed. Cases, No. 1168; In re Cobb, 96 Fed., 821. Nor is it material whether the payment or transfer is made directly or indirectly to the creditor, whose claim is preferentially satisfied thereby. If he receives the benefit of the preference, as the defendant did in this case, it is sufficient.Goldman v. Smith, 93 Fed., 182; Brandenburg, sec. 69. The form of the *Page 171 
transfer or payment is not considered, but the substance of the transaction and its effect in preventing an equal division of the debtor's property among his creditors, subject to preferences lawfully acquired under the law and recognized in the act as valid. The payment, therefore, to the defendant by the assignee was, in legal effect, a payment to her by the bankrupt, as much so as if he had made the payment himself to her.
Actual knowledge of the intent to prefer is not required, nor even a belief, but simply reasonable cause to believe that such was the intent. A party who may be affected by notice must exercise (218) ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired if he had made the necessary effort to discover the truth.Bunting v. Ricks, 22 N.C. 130; Hulbert v. Douglass, 94 N.C. 122;Bryan v. Hodges, 107 N.C. 492; Hill v. R. R., 143 N.C. 539; McIverv. Hardware Co., 144 N.C. 489. This just and reasonable doctrine has been applied in cases where it was sought to fix a creditor of a bankrupt or a purchaser from him with knowledge or notice of the latter's intent in dealing with him, or to show that the creditor or purchaser had reasonable cause to believe in the existence of the debtor's intent to prefer or to defraud. Buchanan v. Smith, 16 Wall., 277; Wager v. Hall, ibid., 584; Harrell v. Beall, 17 Wall., 590. A creditor has reasonable cause to believe his debtor intends to prefer him when such a state of facts is brought to his attention as would lead a prudent man, when put on his guard, to the conclusion that such is his intent. Toof v. Martin, 13 Wall., 40; Bank v. Cook, 95 U.S. 342. Applying these principles to the facts of the case, it cannot be questioned, we think, that the defendant had at least reasonable cause to believe that the bankrupt intended to prefer her, as his creditor, when the payment was made. If we are to judge by what she did and by her own words, the transaction is condemned. She told the trustee that she was protected, and admitted to him that she had been informed of her preference as a creditor, asked that the money be paid to her — virtually asserting her right thereto — and received it from the trustee with the understanding that it was paid to her by reason of her preferential right as a creditor. The trustee stated that "She received it as money due her under the preference in the assignment." If the jury found these to be the facts from the testimony, under the instruction of the court, she had not only reasonable cause to believe that the money was paid with intent to prefer her, but actual notice of the fact; and it is not denied, nor could it be, that the money was, in fact, so paid to her. But in any view of the testimony, even if construed most favorably for the defendant, she had knowledge of facts and circumstances from which the law clearly implied (219) notice. *Page 172 
But if the defendant is to be considered as having derived her right to the money from the assignee and under the assignment, the result will be the same. She necessarily knew that she had been preferred, and her title to the money must fail by the very terms of the bankrupt law.
No error.
Cited: Kivett v. Tel. Co., 156 N.C. 307; Wynn v. Grant, 166 N.C. 45;McNeeley v. Shoe Co., 170 N.C. 281.