## Russell's Trustee v. Mayfield Lumber Company, et al.

(Decided March 24, 1914.)

## Appeal from Graves Circuit Court.

1. Bankruptcy—Transfer—Preference.—In order that a transfer shall constitute a preference, four elements are necessary: (1) The transfer must be made from an insolvent person to a creditor; (2) the effect of such transfer must be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class; (3) the person receiving it or to be benefited thereby, or his agent acting therein, must have had reasonable cause to believe that it was intended thereby to give a preference; (4) the transfer must have been made within four months before filing a petition in bankruptcy, or after filing the petition and before adjudication. If any of these elements is wanting, the preference cannot be set aside, if otherwise valid under the State law.

2. Bankruptcy—Transfer—Preference.—Where a creditor has a mortgage lien on certain real estate, and certain mules, belonging to an insolvent debtor, and the debtor, within four months from the adjudication of bankruptcy, transfers the personal property to the creditor in consideration of the creditor's paying the keep of the mules which had been attached, and certain claims of laborers aggregating $527, and the release by the creditor of its unsecured claims against the debtor, and the land mortgaged is sold and lacks $445.81 of paying off the lien debt, and the value of the property transferred by the debtor does not exceed the lien debt, the keep of the stock, and the amount paid out by the creditor, the transfer does not constitute a preference under the Bankruptcy Act.

3. Bankruptcy—Transfer—Preference—Action by Trustee.—In an action by a trustee against a creditor to set aside a transfer on the ground of preference, evidence considered, and held that no lien was retained on certain mules sold by the creditor to the debtor in the note executed by the debtor for the purchase price.

4. Bankruptcy—Transfer—Preference—Reasonable Cause to Believe Preference Was Intended.—In determining whether or not a creditor to whom an insolvent transferred his property had reasonable cause to believe that a preference was intended, it is the rule that the transferee is chargeable with knowledge of all the facts which, by proper inquiry, he might have ascertained.

5. Bankruptcy—Transfer—Preference—Evidence.—In an action by a trustee in bankruptcy to set aside a preferential transfer, evidence examined, and held to show that the transferee had reasonable cause to believe that a preference was intended.

HESTER & HESTER for appellant.

W. J. WEBB for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming as to Appellee Mayfield Lumber Company, and Reversing as to Appellee V. E. Allen.

John T. Russell and the Mayfield Lumber Company entered into a contract by which Russell was to repair a mill and erect mill houses on the company's land in Bolivar County, Mississippi, and cut logs and saw lumber for it at a stipulated price. To carry on these operations the company loaned him the sum of $2,500, with which he purchased eight work mules. His note for the above sum was secured by a mortgage on the mules, and on certain land lying in Kentucky. On this land there was a vendor's lien for $2,297. Russell also purchased from V. E. Allen two mules for the sum of $275. He removed the mules to the State of Mississippi, and engaged in the saw mill business there. While so engaged in said business he became indebted to the Mayfield Lumber Company in the further sum of $2,200 for money advanced to him to carry on his business. Russell did not make a success of the business, and finally wrote the Mayfield Lumber Company that unless additional money was sent to him he would turn the mules out and not care for them any further. In the month of December, 1911, V. E. Allen, representing himself and the Mayfield Lumber Company, went to Mississippi and ascertained that Russell was doing no work, and that the mules were in a very poor and bad condition from lack of food and attention, and that the money which was being furnished to purchase feed was not so used. On January 1, 1912, Allen, for himself and the Mayfield Lumber Company, brought suit against Russell in Mississippi and attached Russell's property in that State. The mules were kept by the sheriff, and advertised to be sold on January 22, 1912, at which time an expense of $231 had been incurred for the keep of the mules. There were also due by Russell to certain laborers and wage-earners claims amounting to $527. On January

22nd, and in order to avoid further expenses and costs, Allen, representing himself and the Mayfield Lumber Company, agreed with Russell to take charge of the mules, to pay the cost of their keep and the claims that were being asserted by the laborers, to cancel the debt of $275 and the unsecured debt of the Mayfield Lumber Company. One of the mules embraced by the mortgage of the Mayfield Lumber Company died. Under this contract of sale they only secured seven mules and certain wagons and harness, which were of but little value. Allen secured two mules which he had sold. An expense of $75 for freight was incurred in shipping the mules to Mayfield.

On April 26, 1912, and within four months from the time the attachment was secured and the transfer made, Russell filed a voluntary petition in bankruptcy. His trustee brought this action against the Mayfield Lumber Company and V. E. Allen to set aside the transfer and recover the value of the property, it being alleged that Russell was insolvent when the transfer was made and the effect of the transfer was to prefer defendants to the exclusion of other creditors, and that the defendants had reasonable cause to believe that the transfer was intended as a preference. On final hearing the trial court rendered judgment in favor of defendants. The trustee appeals.

In order that a transfer shall constitute a preference four elements are necessary:

(1) The transfer must be made from an insolvent person to a creditor.

(2) The effect of such transfer must be to enable any one of his creditors to obtain a greater percentage of his debt than of any other of such creditors of the same class.

(3) The person receiving it or to be benefited thereby, or his agent acting therein, must have had reasonable cause to believe that it was intended thereby to give a preference.

(4) The transfer must have been made within four months before filing a petition in bankruptcy, or after filing the petition and before adjudication.

If any of these elements is wanting a preference cannot be set aside if otherwise valid under the State law. Bankruptcy Act, 1898, as amended February 5, 1903, 32 Stat. L., 797, sections 60a and 60b; Loveland on Bankruptcy, 3rd Ed., Section 194.

It appears from the evidence that Russell was insolvent, and the petition in bankruptcy was filed, within four months from the time the attachment was filed and the transfer was made. It remains to determine the effect of the transfer, and whether or not the transferees had reasonable cause to believe that a preference was intended. With respect to the transaction so far as the lumber company is concerned the following facts appear:

The mortgage of the lumber company covered certain real estate and the seven mules which it received by the transfer. A sale of the land left a balance of $445.81 due on the mortgage debt. In addition to this sum the keep of the mules, amounting to $231, was paid by the company. The company also paid out $527 to the laborers who were about to attach the property. According to the evidence for the lumber company, the mules, at the time of the attachment and transfer, were in very poor condition because of lack of food and attention, and were not worth exceeding $125 or $150 apiece. The other property transferred was worth practically nothing. According to the evidence of the trustee the mules were worth from $200 to $240 apiece. After carefully considering the evidence, we conclude that the property embraced in the transfer did not exceed in value the sum of $1,200. Certainly to the extent of its mortgage lien, amounting to $445.81, the transfer in question did not constitute a preference so far as the general creditors are concerned. By agreement with the bankrupt, the company paid the bill for keep and the claim for labor. To this extent the transfer was for a present valuable consideration. The fact that these claims were unsecured does not affect the case. If the company had loaned the money and taken a mortgage on the property, its lien would have been valid, even though the money had been applied by the bankrupt to the payment of unsecured debts. George v. Grant, 28 Hun. (N. Y.), 69, 97 N. Y., 262.

A different rule does not prevail because the property is transferred and the proceeds of the sale are so applied. If the property transferred had exceeded in value the amount due the company on its mortgage, and the amount of money actually paid out by it, the necessary effect of the transfer would have been to prefer the company. As it is, the property transferred does not equal its lien debt and the amount of money actually

paid out by it. We, therefore, conclude that the transfer did not constitute a preference so far as the lumber company is concerned.

As to the defendant V. E. Allen, a different question is presented. Allen sold the bankrupt two of the mules for $275. Allen says that he thinks the note given in payment for the mules recited that a lien was retained. Russell says that no lien was retained. The surety, Redden, says that he is satisfied that no lien was retained. In view of Allen's uncertain recollection in regard to the matter, and of the positive statement of two witnesses to the contrary, we conclude that the evidence is not sufficient to show that a lien on the mules was actually retained in the note given for the purchase price. This conclusion makes it unnecessary to pass on the question of the validity of the lien, even if one was retained. As Allen did not have any lien on the mule, the effect of the transfer of the two mules to him was to enable him to obtain a greater percentage of his debt than other creditors of the same class. It was, therefore, a preference. The only remaining question is: Did Allen have reasonable cause to believe that a preference was intended? Though he says that he did not know the bankrupt had any other creditors, he did know that the bankrupt was unable to pay his debts, and that he had virtually abandoned his business. The slightest inquiry on his part would have developed the true situation. Whatever fairly puts a party upon inquiry is sufficient notice, where the means of knowledge are at hand, and if a party, under such circumstances, omits to inquire, and proceeds to receive the transfer, he does so at his peril, and is chargeable with knowledge of all the facts which by proper inquiry he might have ascertained. Crittenden B. Barton (N. Y. Sup. Ct. App. Div.), 5 Am. B. R., 775; Wager v. Hall, 16 Wall., 584, 21 L. Ed., 504; Hackney v. Hargreaves, 68 Neb., 624, 13 Am. B. R., 164; Loveland on Bankruptcy, 3rd Ed., p. 561. The facts are sufficient, we think, to show that Allen had reasonable cause to believe that a preference was intended.

We conclude that the mules transferred to Allen were worth about $250. This amount the trustee is entitled to recover.

The judgment as to the Mayfield Lumber Company is affirmed. As to Allen the judgment is reversed and cause remanded, with directions to enter judgment in conformity to this opinion.