## Hahn v. Wood, Stubbs Company.

(Decided February 20, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, No. 1).

1. Fraudulent Conveyances—Preference—Statute—Sufficiency of Evidence.—In an action by a creditor to have a mortgage executed by a son to his mother adjudged a fraudulent preference and to operate as an assignment of the son's property for the benefit of all of his creditors, evidence examined and held to sustain the finding of the chancellor that the mortgage was executed by the son in contemplation of his insolvency, and with the design to prefer his mother to the exclusion of other creditors.

2. Fraudulent Conveyances—Mortgage — Preference — Parol Agreement to Execute Mortgage—Evidence.—In an action attacking a mortgage as a fraudulent preference, evidence examined and held insufficient to show that the mortgage was made pursuant to an oral agreement by which the mortgagor's interest in his father's estate should stand good for the debt.

3. Fraudulent Conveyances—Preference—Mortgage—Agreement Not to Prosecute Suit—Consideration.—An agreement by a mortgagee who has filed suit against the mortgagor not to prosecute the suit is not sufficient consideration for the execution of a mortgage, the

necessary effect of which is to constitute a fraudulent preference under the statute.

LAWRENCE S. LEOPOLD for appellant.

JAMES P. BROWN, D. A. SACHS, JR., and BENJAMIN SACHS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Plaintiff, Wood, Stubbs Company, a corporation, and a creditor of Fred Hahn, Jr., brought this suit for the purpose of having a mortgage executed by Fred Hahn, Jr., to Mary Hahn on September 26th, 1914, adjudged a fraudulent preference, and to operate as an assignment of his property for the benefit of all his creditors under section 1910 of the Kentucky Statutes. During the progress of the litigation Fred Hahn, Jr., on his voluntary petition, was adjudged a bankrupt by the District Court of the United States for the Western District of Kentucky, and his trustee, R. H. Courtney, made a party to the proceeding. On final hearing the relief prayed for by plaintiff was granted, and the defendant, Mary Hahn, appeals.

It appears that in February, 1912, Phillips Hahn, husband of Mary Hahn and father of Fred Hahn, Jr., died, leaving a last will and testament, by which he devised all of his property to his wife, Mary Hahn, for life, or as long as she remained his widow. In case she died or remarried, the estate was to descend to all of his children, including Fred Hahn, Jr. It was further provided that in the case of the death of any of his children before the death or remarriage of Mary Hahn, the portion of such child should descend to his issue, if any; but if such child left no issue, his share was to go back to the testator's estate and be divided among the other children. Some time after the death of the testator, Henry Hahn, his son, qualified as executor, and Fred Hahn, Jr., borrowed from the estate the sum of $200.00. Later on he borrowed from his mother the sum of $500.00. The mortgage in question was executed to Mary Hahn to secure these sums. On August 3rd, 1914, and prior to the execution of the mortgage, Fred Weikel instituted suit in the Jefferson Circuit Court against Fred Hahn, Jr., to recover the sum of $1,800.00 and in-

terest and costs, and asked for an attachment on the ground that defendant did not have sufficient property in the state subject to execution to pay plaintiff's claim, etc. On the same day a general order of attachment was issued and levied on all of Fred Hahn, Jr.'s, personal property, which was placed in the hands of a special bailiff appointed by the sheriff. It further appears that Hardin and John S. Herr, prior to the execution of the mortgage, had had an execution for $100.00 and interest and costs levied on Fred Hahn, Jr.'s, interest in the real estate devised to him by his father. In addition to these claims, Fred Hahn, Jr.'s, personal property was under mortgage to the Fidelity & Columbia Trust Company to secure an indebtedness of $1,400.00. The personal property of Fred Hahn, Jr., was sold about two months after the execution of the mortgage and the proceeds were sufficient to pay the lien claims of Fred Weikel and the Fidelity & Columbia Trust Company, together with costs. In addition to these claims, there were unsecured debts amounting to about $1,700.00. Aside from his personal property, Fred Hahn, Jr. had a defeasible fee in one-sixth of the real estate devised by his father, which was estimated to be worth about $12,000.00. It also appears that his wife had purchased a farm for the price of $7,000.00 and had paid $2,800.00 of the purchase price. Afterward the farm was sold to avoid a foreclosure. It developed on the cross-examination of Fred Hahn, Jr., that he had some kind of an equity in this farm to the extent of $1,300.00.

This is not a case where a struggling debtor has reasonable grounds to believe that he may pull through and in good faith executes a mortgage to protect his credit. It is a case where his entire personal property was not only subject to a mortgage of $1,400.00, but had been attached on a claim for rent amounting to $1,800.00. Besides this, an execution had been levied on his interest in his father's estate. His personal property consisted of farming implements, stock and crops. These were about to be sold. His business was that of a farmer, and if his stock, farming implements and crops were sold he would necessarily be left without a means of support. In other words, his business would be at an end. Under these circumstances, he executed the mortgage to his mother. His mother makes the point that Fred's debts amounted only to about $5,500.00

and that his personal property, together with his interest in his wife's farm and his interest in his father's estate, was more than sufficient to pay his debts. In this connection it is argued that Fred's testimony shows that his personal property was sacrificed and should have brought several hundred dollars more than it did bring at the sheriff's sale. As a matter of fact, however, he testifies to only two or three items which he claims were sacrificed, and the difference between what was received on these items and what he claims should have been received is not sufficient to materially affect the value of his assets. It is equally clear that the value of his interest in his wife's farm and in his father's estate is altogether too uncertain to justify the conclusion that if it was added to the fair cash value of his personal property the sum would be sufficient to discharge his obligations. Viewing the transaction in the light of all the circumstances, we are unable to say that the chancellor erred in concluding that the mortgage was executed by Fred Hahn, Jr., in contemplation of insolvency, and with the design to prefer his mother to the exclusion of his other creditors. Russell's Trustee v. Mayfield Lumber Company, 158 Ky. 219, 164 S. W. 783; Union Trust & Savings Company v. Taylor, 139 Ky. 283, 129 S. W. 828; Applegate v. Merrill, 4 Metcalfe 23.

Another defense made by Mrs. Hahn is that at the time the loan to Fred Hahn, Jr., was made, it was understood that his share in his father's estate should stand good for the loan, and that the mortgage was executed pursuant to that agreement. Whether the mortgage would have been valid if such an agreement had been proved we deem it unnecessary to decide. It is sufficient to say that the chancellor concluded that no such agreement was made, and that upon a careful consideration of the evidence on this point we see no reason to disturb his finding.

But it is insisted for Mrs. Hahn that as she had brought suit against her son on her claim, and the mortgage was executed in consideration of her agreement not to take any further steps to subject her son's property, such agreement was sufficient to sustain the mortgage. While there are instances where such an agreement may be a sufficient consideration between a creditor and a solvent debtor, we are not prepared to go to the

extent of holding that such an agreement on the part of the mortgagee is a sufficient consideration for a mortgage, the necessary effect of which is to give a fraudulent preference under the statute.

Judgment affirmed.